# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

| | |
|---|---|
| **WOLFSPEED, INC.,** | |
| **Plaintiff,** | |
| vs. | Case No. 1:24-cv-01038 |
| **NAVITAS SEMICONDUCTOR CORPORATION, GENESIC SEMICONDUCTOR LLC, PAUL WHEELER and SASCHA DERN** | |
| **Defendant.** | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Wolfspeed, Inc. ("Wolfspeed"), by and through counsel, hereby submits this Memorandum in Support of its Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO Motion") against Defendant Navitas Semiconductor Corporation and GeneSic Semiconductor, LLC (collectively, "Navitas").

Notwithstanding Navitas's knowledge—including through this very litigation, in which Wolfspeed asserts a claim against Navitas for tortious interference with Wolfspeed's non-competition and non-solicitation agreements with two former employees—that Wolfspeed enters into and enforces restrictive covenant agreements with its senior employees, Navitas has now actively solicited two of Wolfspeed's most senior information technology ("IT") employees. Navitas continues to engage in a pattern and practice of interfering with Wolfspeed's business relationships and employee contracts, including refusal to pay for millions of dollars of product it ordered and received from Wolfspeed. This misconduct and flagrant disregard for accepted

1

business practices, contracts, and the law must be urgently mitigated. To protect its relationship with its high-level employees and the institutional knowledge those employees possess, Wolfspeed moves for a temporary restraining order and preliminary injunction against Navitas.[1]

## PROCEDURAL HISTORY

Wolfspeed filed its initial complaint against Navitas on December 11, 2024. Pursuant to the Court's May 2, 2025 Order granting Navitas an extension of time to respond, Navitas filed its answer to the initial complaint on May 23, 2025. On October 20, 2025, Wolfspeed moved to amend the Complaint [ECF No. 15] to add Defendant Paul Wheeler, and to add causes of action against Mr. Wheeler for Breach of Contract and Breach of RSU Agreements' Terms and Conditions. Before the Court ruled on Wolfspeed's Motion to Amend, on November 7, 2025 Wolfspeed filed an Amended Motion to Amend the Complaint [ECF No. 17] to add Defendant Sascha Dern and to add causes of action against Mr. Dern for Breach of Contract and Breach of RSU Agreements' Terms and Conditions. On December 30, 2025, Magistrate Judge Peake granted Wolfspeed's Motions to Amend [ECF No. 19]. Defendants Navitas and Genesic filed their Answer to the Amended Complaint on January 20, 2026 [ECF No. 22] and Defendant Paul Wheeler filed his Answer on March 6, 2026 [ECF No. 27]. Defendant Sascha Dern has not yet made an appearance in this case.

Relevant to this Motion, the Amended Complaint asserts a cause of action against Navitas for wrongful interference with contractual relationships. In pertinent part, Wolfspeed alleges that Navitas "is aware of the non-competition and non-solicitation provisions" in Defendants Dern's and Wheeler's employment agreements with Wolfspeed. Contemporaneous with the filing of the

---

[1] Contemporaneous with the filing of the Motion, Wolfspeed has filed a motion for leave to amend the operative Complaint to assert a cause of action against Navitas for injunctive relief and to add allegations concerning Navitas's most recent attempts to solicit additional Wolfspeed employees.

2

Motion and this Memorandum, Wolfspeed has filed a Motion for Leave to file a Second Amended Complaint asserting a cause of action against Navitas for injunctive relief arising out of Navitas's continued wrongful efforts to interfere with Wolfspeed's contracts with its senior IT employees.

On March 31, 2026, Wolfspeed filed a Motion for Partial Judgment on the Pleadings against Defendant Navitas Semiconductor Corporation [ECF No. 28, 29] only on Navitas's liability under Wolfspeed's breach of contract claim against Navitas. Navitas filed its Opposition on April 21, 2026 [ECF No. 31]. Wolfspeed's Reply is due May 5, 2026. The resolution of this Motion should not impact the briefing schedule or resolution of Wolfspeed's Motion for Partial Judgment on the Pleadings.

### FACTUAL BACKGROUND

Wolfspeed's allegations against Navitas in this litigation include a claim for wrongful interference with Wolfspeed's contracts with its employees. There can therefore be no dispute that Navitas is on notice that Wolfspeed enters into non-competition and non-solicitation agreements with its high-level employees and that Wolfspeed takes those obligations seriously. Nevertheless—even as Wolfspeed's wrongful interference claim remains pending—Navitas has continued to engage in tortious activity against Wolfspeed.[2] Most recently, Navitas solicited two of Wolfspeed's most senior IT employees—Priya Almelkar and Sandeep Misra, encouraging them to violate their employment agreement with Wolfspeed.

Ms. Almelkar serves as Wolfspeed's Senior Vice President, Chief Information Officer. Ms. Almelkar began her employment with Wolfspeed in January 2021 and is responsible for overseeing the overall information systems that Wolfspeed utilizes across its organization. She is

---

[2] Navitas has not only continued to interfere with Wolfspeed's contracts but has also engaged in other tortious conduct against Wolfspeed. Among other things, Navitas ordered, received and retained millions of dollars of products from Wolfspeed that it inexcusably refused to pay for, the proceeds of which potentially represent a material portion of Navitas's revenue.

the most senior employee in the IT organization.  Ms. Almelkar signed an employment agreement with Wolfspeed that, like the employment agreements of Defendants Dern and Wheeler, contains non-competition covenants.  Ms. Almelkar is a senior employee with important responsibilities, and her loss to a competitor would represent a significant hardship to Wolfspeed with serious ramifications to Wolfspeed's ability to conduct its business.

Mr. Misra is Wolfspeed's Vice President, Enterprise Applications, a senior-level IT employee who reports directly to Ms. Almelkar and whom Wolfspeed hired in October 2023.  In his role, Mr. Misra oversees a team of project leaders who are responsible for managing system-specific work.  Mr. Misra, too, signed an employment agreement with Wolfspeed that contains non-competition covenants.  Like Ms. Almelkar, Mr. Misra is a senior employee with significant responsibilities whose loss to a competitor would impose substantial hardship on Wolfspeed and its ability to conduct its business.

Wolfspeed became aware within the past several days that Navitas recently attempted to solicit both Ms. Almelkar and Mr. Misra away from Wolfspeed.  Specifically, on March 11, 2026, a recruiter working at Navitas's direction reached out to Ms. Almelkar to attempt to induce Ms. Almelkar to terminate her employment with Wolfspeed and to work for Navitas.  A separate recruiter working at Navitas's direction made a similar overture to Mr. Misra on April 9, 2026.  Wolfspeed's legal department became aware of these solicitations the week of April 27, 2026.  Wolfspeed urgently filed the Motion to enjoin Navitas from continuing to interfere with Wolfspeed's employment contracts.

## LEGAL STANDARD

To obtain a temporary restraining order against Navitas, Wolfspeed must show that: (1) it is likely to succeed on the merits of its claim against Navitas; (2) it is likely to suffer irreparable

4

harm if an injunction does not issue; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also* Fed. R. Civ. Pr. 65. Though Wolfspeed must satisfy each element, it need not "show a certainty of success." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), followed in part sub nom. *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010). As set forth below, Wolfspeed satisfies each element.

## ARGUMENT

1. <u>*Wolfspeed's Claim Against Navitas Is Likely to Succeed on the Merits*</u>

To state a claim against Navitas for wrongful interference with Wolfspeed's contracts, Wolfspeed must allege: (1) the existence of a valid contract between Wolfspeed and its specific employees; (2) Navitas had knowledge of those contracts; (3) Navitas intentionally induced the employees to violate or otherwise not perform their contractual obligations to Wolfspeed; (4) Navitas's acts were committed without justification; and (5) Wolfspeed suffered actual damage. *See Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000). Whether Navitas's interference with a contract is justified depends on the surrounding circumstances, including Navitas's motive or conduct, the interests Navitas sought to advance, the social interest in protecting the freedom of Navitas's actions, and Wolfspeed's contractual interests. *See Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).

Here, Wolfspeed's proposed Second Amended Complaint and the Van Gorder Declaration filed in support of this Motion establish that Wolfspeed entered into valid employment agreements with Ms. Almelkar and Mr. Misra and that Navitas, through recruiters acting at its direction, has

encouraged Wolfspeed's employees to violate those contracts by terminating their employment with Wolfspeed and going to work for Navitas, a direct competitor. At least through this litigation, which has been ongoing since December 2024—nearly a year and a half—Navitas is aware of the fact of Wolfspeed's non-competition and non-solicitation covenants with its high-level employees. Navitas therefore has no legitimate interest in interference with those contracts and its attempts to interfere with them are without justification. Further, Navitas's attempted interference has resulted in actual damage to Wolfspeed, including its loss of employee time and resources dealing with Navitas's attempts to solicit Wolfspeed employees and increased legal costs related to preventing Navitas from continuing its wrongful and tortious conduct. Accordingly, the Court should conclude that Wolfspeed's claim against Navitas for wrongful interference is likely to succeed on the merits.

2. *Wolfspeed Is Likely to Suffer Irreparable Harm Without an Injunction*

Irreparable injury includes injury for which a monetary award would be inadequate, or for which a monetary award is incalculable. *Carlson Environmental Consultants, P.C. v. Slayton*, No. 3:17-cv-00149-FDW-DCK, 2017 WL 4225993, at *10 (W.D.N.C. Sept. 21, 2017). Irreparability of harm includes the impossibility of ascertaining with any accuracy the extent of the loss. *Id.* Poaching employees is, as a matter of law in North Carolina, irreparable injury. *Amdar, Inc. v. Satterwhite*, 37 N.C. App. 410, 246 S.E.2d 165 (1978).

3. *The Balance of Equities Favors Wolfspeed*

To obtain interim injunctive relief, Wolfspeed must establish that the balance of equities tips in its favor. *Winter*, 555 U.S. at 20. To that end, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

6

requested relief.'" *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, No. 17-cv-00150- MR-DLH, 2017 WL 3838638 at \*1 (W.D.N.C. Sept. 1, 2017).

The context of Navitas's behavior is important for this TRO Motion. Navitas has engaged, and continues to engage, in a pattern and practice of poaching Wolfspeed's employees and engaging in unfair competition with Wolfspeed. Navitas also breached its agreement with Wolfspeed by accepting and refusing to pay for millions of dollars of products and then subsequently poached Wolfspeed's employees, which has been alleged in Wolfspeed's First and Second Amended Complaints. These actions cannot continue—Navitas is acting unreasonably and unfairly, and actively disregarding both its contractual obligations and the law, and must be restrained from continuing to do so. To be clear, Navitas has been engaging in a pattern of intentionally harming Wolfspeed by breaching its contracts with Wolfspeed, poaching Wolfspeed's employees, and infringing Wolfspeed's intellectual property. Navitas has been on notice that Wolfspeed is suing Navitas for not only breach of contract, but also tortious interference with Wolfspeed's important business interests and yet continues to flagrantly flaunt the law. These equities thus balance strongly in Wolfspeed's favor with respect to granting a TRO.

4. *An Injunction Is in the Public Interest*

An injunction must also support the public interest. *Winter*, 555 U.S. at 20. Here, public policy favors the enforcement—and, implicitly, supports not disturbing—restrictive covenants that are necessary to protect a company's business interests. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 649 (1988).

**CONCLUSION**

For all of the reasons above, Wolfspeed respectfully requests that this Court issue a temporary restraining order enjoining Navitas from continuing its attempts to poach Wolfspeed's employees.

This the 4th day of May, 2026.

/s/ Rebecca K. Lindahl

Rebecca K. Lindahl (N.C. Bar No. 35378)
**KATTEN MUCHIN ROSENMAN LLP**
615 S. College Street, Suite 1700
Charlotte, NC 28202-4123
(704) 344-3141
rebecca.lindahl@katten.com

Asena Baran (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
(310) 788-4418
asena.baran@katten.com

*Attorneys for Plaintiff Wolfspeed, Inc.*

8