# EXHIBIT 4

Case 1:24-cv-01038-UA-JEP      Document 48-4      Filed 06/18/26      Page 1 of 5

# WOLFSPEED

## SALES TERMS AND CONDITIONS

Unless otherwise specifically agreed to in writing by Seller, these Wolfspeed Sales Terms and Conditions ("Sales Terms and Conditions") shall apply to any and all orders placed by Buyer for products or services of Seller. In these Sales Terms and Conditions, the Wolfspeed company designated in Seller's order acknowledgement is referred to as "Seller" and the party to whom Seller's order acknowledgement is addressed is referred to as "Buyer."

1. **ACCEPTANCE OF ORDERS.** Seller's acceptance of all orders and all offers and sales by Seller are subject to and expressly conditioned upon Buyer's assent to the terms and conditions of the "Agreement," which consists collectively of these Sales Terms and Conditions, Seller's quotation, if any, and Seller's order acknowledgement. Buyer's acceptance of any offer by Seller must be made on such terms and conditions exactly as offered by Seller. Any of Buyer's terms and conditions which are different from or in addition to those contained in the Agreement are objected to by Seller and shall be of no effect unless specifically agreed to in writing by Seller. Commencement of performance or shipment shall not be construed as acceptance of any of Buyer's terms and conditions which are different from or in addition to those contained in the Agreement. If a contract is not earlier formed by mutual agreement in writing, acceptance by Buyer of products or services furnished by Seller pursuant hereto shall be deemed Buyer's assent to all of the terms and conditions of the Agreement.

The Agreement shall be governed by the laws of the State of New York as if made and to be performed entirely within such state.

2. **PRICES.** The prices stated in the Agreement do not include transportation, insurance or any sales, use, excise or other taxes, duties, fees or assessments imposed by any jurisdiction except as provided in Section 4 below in the case of Affected Products (as defined in Section 4). All applicable taxes will be paid by Buyer, unless Buyer provides Seller with appropriate tax exemption certificates. Any amounts paid at any time by Seller that are the responsibility of Buyer shall be invoiced to Buyer and reimbursed to Seller. Seller reserves the right to adjust prices for any reason for products not yet shipped, including but not limited to increases in the cost of raw materials or other production-related inputs. All prices and other terms are subject to correction for typographical or clerical errors.

3. **TERMS OF PAYMENT**. All payments shall be in U.S. dollars. Buyer shall pay for products in cash upon delivery, unless an earlier or later time for payment is specified herein or in the order acknowledgement (in which case payment shall be due at the time so specified). Each shipment shall be considered a separate and independent transaction, and payment for each shipment shall be due accordingly.

Seller may, at its option, elect to extend credit to Buyer. If Seller extends credit to Buyer, unless otherwise agreed to in writing by Seller, invoices will be issued upon shipment and payment shall be due in full within thirty (30) days from the invoice date or such other date specified in the Agreement. Seller reserves the right to change the amount of or withdraw any credit extended to Buyer.

Unless otherwise specified in the Agreement or agreed to in writing by Seller, amounts owed for services will be invoiced monthly or, if sooner, upon completion of the work. Payment of such invoices is due within thirty (30) days from the invoice date.

Amounts not paid when due shall be subject to interest at the rate of one and one-half percent (1½%) per month or, if less, the maximum rate permitted by law.

In the event of the bankruptcy or insolvency of Buyer, or the filing of any proceeding by or against Buyer under any bankruptcy, insolvency or receivership law, or in the event Buyer makes an assignment for the benefit of creditors, Seller may, at its election and without prejudice to any other right or remedy, exercise all rights and remedies granted Seller in Section 7 as in the case of a default by Buyer under the Agreement.

4. **DELIVERY, TITLE AND RISK OF LOSS**. Unless otherwise agreed in writing by Seller, products shall be shipped EXW Seller's manufacturing facilities or inventory hub (Incoterms 2010) to any location designated by Buyer (subject to compliance with Section 15) and shall be deemed delivered to Buyer when delivered to the transportation company at the shipping point. All transportation charges and expenses shall be paid by Buyer, including the cost of any insurance against loss or damage in transit which Seller may obtain at Buyer's written request. Seller reserves the right to ship products freight collect.

Seller hereby reserves, and Buyer hereby grants to Seller, a purchase money security interest in all products purchased under the Agreement, together with all proceeds thereof, including insurance proceeds. Such security interest secures all of Buyer's obligations arising under the Agreement, and any other agreements between Buyer and Seller, until all amounts due Seller hereunder have been paid in full. Buyer agrees upon Seller's request to sign appropriate financing statements evidencing Seller's security interest.

Subject to the security interest reserved to Seller, title and risk of loss and/or damage to products shall pass to Buyer upon delivery of the products to the transportation company at the shipping point. Confiscation or destruction of or damage to products shall not release, reduce or in any way affect the liability of Buyer. In the event Buyer rejects or revokes acceptance of any products for any reason, all risk of loss and/or damage to such products shall nonetheless remain with Buyer unless and until the same are returned at Buyer's expense to such place as Seller may designate in writing. Prior to returning any product for any reason, Buyer will notify Seller and obtain a return materials authorization (RMA) number and will follow Seller's RMA instructions.

All products must be inspected upon receipt. Buyer shall file claims with the transportation company when there is evidence of shipping damage, either concealed or external.

Case 1:24-cv-01038-UA-JEP    Document 48-4    Filed 06/18/26    Page 2 of 5

5.  **PERFORMANCE**.  Seller will make a reasonable effort to perform on or before the dates specified in the Agreement or such later dates as may be agreed to by Buyer for delivery or other performance, but Seller shall not be liable for any delay in delivery or failure to perform due to acceptance of prior orders, strike, lockout, riot, war, fire, act of God, accident, delays caused by any subcontractor or supplier or by Buyer, technical difficulties, failure or breakdown of machinery or components necessary for order completion, inability to obtain or substantial rises in the price of labor or materials or manufacturing facilities, curtailment of or failure to obtain sufficient electrical or other energy supplies, or compliance with any law, regulation, order or direction, whether valid or invalid, of any governmental authority or instrumentality thereof, or due to any circumstances or any causes beyond its reasonable control, whether similar or dissimilar to the foregoing and whether or not foreseen.  As used herein, "performance" shall include, without limitation, fabrication, shipment, delivery, assembly, installation, testing and warranty repair and replacement, as applicable.

Buyer agrees that any delay in delivery or failure to deliver or perform any part of the Agreement shall not be grounds for Buyer to terminate or refuse to comply with any provisions hereof and no penalty of any kind shall be effective against Seller for such delay or failure; provided, however, that if the delay or failure extends beyond six (6) months from the originally scheduled date either party may, with written notice to the other, terminate the Agreement without further liability for the unperformed part of the Agreement.

6.  **ACCEPTANCE**.  All products delivered hereunder shall be deemed accepted by Buyer as conforming to the Agreement, and Buyer shall have no right to revoke any acceptance, unless written notice of the claimed nonconformity is received by Seller within twenty (20) days of delivery thereof.

7.  **DEFAULT AND TERMINATION**.  Buyer may terminate the Agreement if Seller materially defaults in the performance of its obligations hereunder and fails to cure such default within sixty (60) days after written notice thereof from Buyer.  Such termination shall be Buyer's sole remedy in the event of a default by Seller.

Buyer shall be deemed in material default under the Agreement if Buyer fails to pay any amounts when due hereunder, cancels or attempts to cancel the Agreement prior to delivery or refuses delivery or otherwise fails to perform any of its obligations hereunder or fails to pay Seller any sums due under any other agreement or otherwise.  In the event of a material default by Buyer, Seller may, upon written notice to Buyer, (1) suspend its performance and withhold shipments, in whole or in part, (2) terminate the Agreement, (3) declare all sums owing to Seller immediately due and payable, and/or (4) recall products in transit, retake same and repossess any products held by Seller for Buyer's account, without the necessity of any other proceedings, and Buyer agrees that all products so recalled, taken or repossessed shall be the property of Seller, provided that Buyer is given credit therefor. Exercise of any of the foregoing remedies by Seller shall not preclude exercise of any of the others, and neither the existence nor exercise of such remedies shall be construed as limiting, in any manner, any of the rights or remedies available to Seller under the Uniform Commercial Code or other laws.

8.  **PATENTS AND OTHER INTELLECTUAL PROPERTY RIGHTS**.  To the extent that the products include silicon carbide or Group III-nitride based semiconductor wafers (including semi-insulating wafers and epiwafers), Buyer may use the purchased wafers for research, development and production in all fields other than the bulk growth of silicon carbide and Group III-nitride based materials.  As a condition of sale, Buyer warrants that it will not use any of the purchased wafers in the bulk growth of silicon carbide or Group III-nitride based materials or in the development of processes for bulk growth of such materials.  Growth of one or more silicon carbide or Group III-nitride epitaxial layers on a single substrate having an aggregate epitaxial thickness of less than 150 microns will not be considered bulk growth for purposes of the Agreement.  Buyer may not transfer the wafers to a third party before dicing unless Buyer gives the third party written notice of the limited license in substantially the following form: "This material is licensed for limited use and may not be used for the bulk growth of silicon carbide or Group III-nitride based materials or the development of processes for the bulk growth of such materials." Upon Seller's request, Buyer agrees to provide to Seller an attestation from a senior executive of Buyer that is acceptable to Seller and certifies compliance with the requirements described in this paragraph.

The sale of products or provision of services hereunder does not convey any express or implied license under any patent, copyright, trademark or other proprietary rights owned or controlled by Seller, whether relating to the products sold or any manufacturing process or other matter.  All rights under any such patent, copyright, trademark or other proprietary rights are expressly reserved by Seller.  Furthermore, Buyer agrees not to infringe, directly or indirectly, any patents of Wolfspeed, Inc. or its subsidiaries with any combination or system incorporating a product sold hereunder.

Seller will defend any suit or proceeding brought against Buyer insofar as such suit or proceeding is based on a claim that the design or manufacture of products furnished hereunder which were manufactured solely to Seller's designs and specifications infringe any U.S. patent issued as of the date of shipment, provided Seller is promptly notified in writing of such suit or proceeding and is given full authority, information and assistance by Buyer for such defense.  Seller will pay all damages and costs based on such claim of infringement which are finally awarded against Buyer in any such suit or proceeding or paid by way of settlement, but Seller shall have no liability whatsoever with respect to any settlement made by Buyer without Seller's prior written consent, which Seller may withhold in its sole discretion.  If such products are held to infringe any U.S. patent and their use or sale is enjoined, or if in the opinion of Seller such products are likely to become the subject of such a claim of infringement, Seller may, in its sole discretion and at its own expense, either procure a license which will protect Buyer against such claim without cost to Buyer, replace such products with non-infringing products, or require return of such products and refund an equitable portion of the price paid by Buyer to Seller for such products.

The foregoing states Seller's sole liability for any claim based upon or related to any alleged infringement of any patent or other intellectual property rights.  Seller shall have no liability for any claim of infringement or damages based on a combination of products furnished under the Agreement with products, equipment or materials not furnished hereunder, or based upon any items made with the products furnished under the Agreement.

Case 1:24-cv-01038-UA-JEP     Document 48-4     Filed 06/18/26     Page 3 of 5

Buyer shall defend and hold Seller harmless against any expense, loss, costs or damages resulting from any claimed infringement of patents, trademarks or other intellectual property rights arising out of compliance by Seller with Buyer's designs, customized specifications, or instructions.

9. **LIMITED WARRANTY**. Unless Seller expressly indicates in writing that the Products are sold **"AS IS,"** without warranty of any kind, or otherwise on warranty terms that are different from those set forth in this Section 9, Seller warrants that its products furnished under the Agreement will conform to and perform in accordance with Seller's published specifications for such products as in effect on the date of shipment (within the deviations specified therein) for a period of ninety (90) days from such date. Seller's liability and Buyer's sole remedy under this warranty is limited to repair or replacement of items determined by Seller to be defective or, at Seller's sole option, refund of the purchase price paid Seller for such items. Seller shall have no liability under this warranty unless Seller is notified in writing promptly upon Buyer's discovery of the defect and the defective items are returned to Seller, freight prepaid, and received by Seller not later than ten (10) days after expiration of the warranty period.

This warranty shall not apply to any defect or failure to perform resulting from misapplication, improper installation, improper operation, incompatible drivers, or abuse or contamination, whether internal or external, and Seller shall have no liability of any kind for failure of any equipment or other items in which the products are incorporated or for failure of the products caused by goods and services not supplied by Seller. This warranty shall not apply to products manufactured by Seller to Buyer's designs or customized specifications, and such non-standard products are sold **"AS IS"** and without warranty of any kind unless otherwise specifically agreed to in writing by Seller.

Seller warrants to Buyer that services provided hereunder will be performed in a reasonable, workmanlike manner. Seller will have no liability under this warranty unless Seller is given written notice of the claimed breach and a description thereof within ninety (90) days after the service is rendered. Seller's entire liability and Buyer's sole remedy under this warranty shall be limited to the provision of such remedial or replacement services as Seller reasonably determines necessary to correct the breach.

**THE FOREGOING WARRANTY PROVISIONS ARE EXCLUSIVE AND ARE GIVEN AND ACCEPTED IN LIEU OF ANY AND ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY AGAINST INFRINGEMENT OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

Remedies of Buyer for any breach of warranty are limited to those provided herein to the exclusion of all other remedies, including, without limitation, incidental or consequential damages. No warranty or agreement varying or extending the foregoing warranty and limitation of remedy provisions may be relied upon by Buyer unless it is in writing and signed by the President or a Vice President of Seller. No representation or affirmation of Seller, whether by words or action, shall be construed as a warranty. If any model or sample was shown to Buyer, such model or sample was used merely to illustrate the general type and quality of the products and not to represent that the products would necessarily conform to the model or sample.

10. **LIMITATION OF LIABILITY AND CLAIMS**. **SELLER'S AGGREGATE LIABILITY IN DAMAGES OR OTHERWISE SHALL IN NO EVENT EXCEED THE AMOUNT, IF ANY, RECEIVED BY SELLER HEREUNDER. IN NO EVENT SHALL SELLER BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL LOSS OR DAMAGES OF ANY KIND, HOWEVER CAUSED, OR ANY PUNITIVE, EXEMPLARY OR OTHER DAMAGES. NO ACTION, REGARDLESS OF FORM, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE AGREEMENT OR PRODUCTS OR SERVICES FURNISHED BY SELLER MAY BE BROUGHT BY BUYER MORE THAN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUED.**

11. **ENTIRE AGREEMENT**. The Agreement constitutes the entire agreement of the parties and supersedes all prior negotiations, proposals, agreements and understandings, whether oral or written, relating to the products to be purchased hereunder or otherwise relating to the subject matter of the Agreement. Any representation, warranty, course of dealing or trade usage not expressly contained or referenced herein shall not be binding on Seller.

12. **ATTORNEY'S FEES**. In the event of default in payment of the purchase price or any part thereof, Buyer agrees to pay Seller's expenses, including reasonable attorney's fees and expenses, incurred by Seller in enforcing payment thereof, including all expenses incurred in connection with any arbitration or judicial proceeding.

13. **ARBITRATION.** Any controversy or claim (including, without limitation, any claim based on negligence, misrepresentation, strict liability or other basis) arising out of or relating to the Agreement or its performance or breach, which involves an amount in excess of $50,000 (exclusive of interest and costs), shall be settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce, if arbitration is demanded by either party. The location of the arbitration shall be the City of Raleigh, North Carolina if Seller's principal office is located in the United States, or Hong Kong if Seller's principal office is located outside of the United States unless both Buyer's and Seller's principal offices are located in China. If Buyer's and Seller's principal offices are in China, the location of the arbitration shall be the City of Shanghai, China. The decision in such arbitration shall be final and binding and any award rendered thereon may be entered in any court having jurisdiction.

14. **ASSIGNMENT**. Seller may assign or transfer any rights or claims under the Agreement. Buyer shall not assign or transfer any rights or claims under the Agreement without the prior written consent of Seller, and any purported assignment made without such consent shall be void. The Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties.

15. **EXPORT CONTROL**. Seller's export of the products, and any technical information related thereto, may be subject to United States and/or other national or international (e.g., UN) laws and regulations controlling the export and re-export of technical data and products, or limiting the export of certain products to specified countries (e.g., embargo regulations). Seller shall not be obligated under these Sales Terms and Conditions to export, transfer or deliver any products or related technical information to Buyer if prohibited by applicable law or until all necessary governmental authorizations have been

obtained.  Seller shall not be liable under these Sales Terms and Conditions for any expenses or damages resulting from failure to obtain or delays in obtaining any required government authorizations. Buyer shall comply fully with all export administration and control laws and regulations of the U.S. government and/or other national or international (e.g. UN) laws and regulations as may be applicable to the export, re-export, resale or other disposition of any products purchased from Seller.

16. **PRODUCT SAFETY**. Buyer shall comply fully with all industry safety standards applicable to the manufacture, distribution, or sale of items incorporating the products supplied by Seller, including but not limited to American Nationals Standards Institute (ANSI)/Illuminating Engineering Society of North America (IESNA) RP-27 (or equivalent eye safety labeling standards) and International Standard IEC 62471-2006, published by the International Electrotechnical Commission, including all marking, labeling, and supplemental user and service information (if any) required by the standards, where applicable.  Buyer shall comply fully with all applicable safety-related laws, rules and regulations of any governmental body having jurisdiction to regulate the manufacture, distribution, or sale of items incorporating the products supplied by Seller. Buyer shall obligate all persons and entities buying such products from Buyer (other than end users) to comply with such industry standards, laws, rules or regulations applicable to such person or entity.  Buyer shall defend and hold Seller harmless against any expense, loss, costs or damages relating to any claimed failure by Buyer to comply with such industry standards, laws, rules or regulations or from any bodily injury, illness or property damage resulting from products manufactured by Buyer which incorporate the products supplied by Seller to the extent not attributed to the fault of Seller.

17. **GENERAL**.  If the products purchased from Seller are to be used in the performance of a government contract or subcontract, no government requirements or regulations shall be binding upon Seller unless specifically agreed to by Seller in writing. No modification, amendment, rescission, waiver or other change in the Agreement shall be binding on Seller unless agreed to in writing by Seller.  The invalidity or unenforceability, in whole or in part, of any provision herein shall not affect the validity or enforceability of any other provision herein.  Failure or delay on the part of either party to exercise any right, power, privilege or remedy herein shall not constitute a waiver thereof. The section headings contained herein are for convenience of reference only and are not to be used in the construction or interpretation of the Agreement.

Case 1:24-cv-01038-UA-JEP     Document 48-4     Filed 06/18/26     Page 5 of 5