# EXHIBIT 6



**Navitas Semiconductor Corporation**
3520 Challenger Street
Torrance, CA 90503-1640
Main: +1 (844) 654-2642

**Paul D. Delva**
Sr. V.P., General Counsel and Secretary
Direct: +1 (510) 833-3485
paul.delva@navitassemi.com

*Via email only to Melissa.Garrett@wolfspeed.com*

**Confidential Settlement Communication**\*

May 17, 2024

Melissa Garrett
Vice President, Legal
Wolfspeed, Inc.
4600 Silicon Drive
Durham, NC 27703

Re: Your letter of May 3, 2024 regarding 1,975 wafers shipped to Navitas in Q1 2024

Dear Melissa:

Further to our telephone discussion on May 8, 2024 regarding the subject matter, this letter responds to your letter of May 3, 2024 and proposes a resolution to the matter.

As we have previously communicated, we do not agree that Navitas has any obligation to pay Wolfspeed for the purchase price of the 1,975 wafers at issue. This was the basis for our decision to return the wafers to Wolfspeed.

Although Navitas did place a purchase order for the wafers at a price of $855 per wafer, Navitas did not agree to the terms and conditions set forth in Wolfspeed's offer of the same date. The facing page of Wolfspeed's "Offer and Agreement for the Sale of Products" stated that it could be accepted "*only* upon receipt by Seller . . . of a copy of [the] offer *signed on behalf of Buyer* . . . or [receipt by Seller] of Buyer's purchase order . . . *signed on behalf of Buyer*." (All italics added.) Moreover, section 1 of the terms and conditions attached to Wolfspeed's offer stated that "Buyer's acceptance of any offer by Seller *must* be made on such terms and conditions *exactly as offered by Seller*." Neither Navitas nor Wolfspeed signed either Wolfspeed's offer or Navitas' purchase order. Thus, by Wolfspeed's own terms, Navitas did not accept Wolfspeed's offer. As a result, the exchange of those documents did not establish a contract, or impose any obligations on Wolfspeed or Navitas.

To the extent the exchange of those documents and the parties' subsequent conduct created any implied contract, it was a customary commercial arrangement in the semiconductor industry. Those typical arrangements provide for liberal rights of the merchant parties to cancel or reschedule orders without legal

---

\* This letter and its contents are communications made for the purpose of attempting to settle a disputed claim, are not an admission of liability or wrongdoing, and are intended to be confidential and inadmissible in any court proceeding as provided by Rule 408 of the Federal Rules of Evidence or equivalent provision of applicable state law.

liability, and they certainly do not establish rigid "take-or-pay" terms on the basis of documents like those exchanged here. When buyers and sellers in this industry wish to establish take-or-pay obligations, or non-cancellable/non-reschedulable orders, they enter into contracts which expressly provide for such terms. Both Wolfspeed and Navitas have those kinds of contracts and know how to create them, but they did not do so here.

Despite the absence of a contract, Navitas recognizes that Wolfspeed shipped 625 wafers to Navitas in the first quarter of this year, before Navitas requested that Wolfspeed stop all further shipments on February 8, 2024. As to those wafers, and subject to the parties entering into a customary mutual release of claims (in respect of all 1,975 wafers at issue) Navitas is willing to offer Wolfspeed $100 per wafer, or an aggregate of $62,500, in consideration for the inconvenience resulting from this situation. This amount reflects the difference between the purchase order price of $855 and the prevailing price of $755 per wafer, which is based on a quote for wafers Navitas received from Wolfspeed in October 2023. This amount is also intended to reflect the measure of damages that Wolfspeed would be entitled to receive, assuming (solely for the sake of argument and for purposes of this offer to compromise) that Navitas in fact had a contractual obligation to pay for those wafers, and breached that obligation. As to the remaining 1,350 wafers, for the reasons set forth above, Navitas does not have an obligation to pay for them and, accordingly, does not intend to pay for them. In this connection, Navitas will shortly be returning the 925 wafers in our possession (as we had advised in our earlier response letter).

For the avoidance of doubt, since there is either no contract regarding any of the 1,975 wafers at issue, or Navitas had the right to cancel the order and return the affected wafers under any theory of implied contract, Navitas does not have any rights to those wafers and, consequently, Wolfspeed is free to sell any or all of them to others or to otherwise dispose of them as Wolfspeed desires.

The foregoing is not an exhaustive description of Navitas' position in this matter, and Navitas reserves all of its rights.

I would welcome the opportunity to further discuss this matter with you should you have any questions or would like to further explore a mutually agreeable resolution. Despite our differences in this matter, Navitas values our relationship with Wolfspeed, wishes to continue to source wafers from Wolfspeed, and hopes this matter can be resolved in a businesslike fashion and on mutually agreeable terms.

Sincerely,

NAVITAS SEMICONDUCTOR CORPORATION

By: _____

Paul D. Delva
Senior Vice President, General Counsel
and Secretary