# EXHIBIT 8



**EMPLOYEE AGREEMENT REGARDING
CONFIDENTIAL INFORMATION, INTELLECTUAL PROPERTY
AND NONCOMPETITION**

In consideration of my employment by Cree, Inc., a North Carolina corporation, or by any of its divisions, subsidiaries or affiliates (collectively, the "Company"), and of my compensation and benefits as an employee of the Company, including grants of equity (if applicable), I agree as follows:

1.  **Protection of Confidential Information.** I understand that during my employment I may have access to nonpublic or otherwise confidential information relating to the Company, such as nonpublic information relating to the Company's business plans, products, manufacturing operations, research and development activities, finances, customers, vendors and personnel. Such information, whether of a technical or non-technical nature, is referred to below as "Confidential Information." As used in this Agreement, that term also includes information third parties disclose to the Company under an obligation to hold such information in confidence.

    Confidential Information includes, without limitation, Company's sales and service methodology and techniques, customer lists, prospect lists, customer proposals, quotations for services, findings as to a customer's or prospect's needs, financial reports and analyses, budgets, capital plans, cost and pricing information and structures (except for standard pricing information Company distributes or makes available to all customers and prospects), financial arrangements, sales plans, distribution plans, the terms and conditions of Company's contracts, business plans, strategic plans, capital plans, marketing plans, training methods and programs, computer passwords, coding, research and development, formulas, designs and plans, manufacturing processes, operational processes, and trade secrets as well as any material that I am advised contains confidential information. I acknowledge that Confidential Information includes any such information developed or created by me if the information was developed or created by me while executing my duties for Company or if the information was developed or created by me based upon information that I received by virtue of my employment with Company. Finally, I understand that Confidential Information does not include any information that is in the public domain by means other than disclosure by me, but shall include non-public compilations, combinations, or analyses of otherwise public information.

    I will comply with all Company policies and procedures concerning Confidential Information. I will not disclose Confidential Information to any third party except when authorized in performing my duties for the Company, and I will not use Confidential Information for any purpose other than performing my duties for the Company.

    As to any Confidential Information constituting a trade secret under applicable law, I agree that I will not, for so long as the item qualifies as a trade secret, use or disclose (or cause to be used or disclosed) such Confidential Information, except to the extent necessary in executing my duties for Company. As to all other Confidential Information (i.e., Confidential Information that does not constitute a trade secret), I agree that I will not, either during the course of my employment with Company or for two (2) years thereafter, use or disclose (or cause to be used or disclosed) such Confidential Information except to the extent necessary in executing my duties for Company. I further agree that when using Confidential Information to further Company's business, I will use my best efforts to limit the disclosure of Confidential Information to those within Company who have a legitimate need to know the information.

Eff. 5/2017 (MLO)

2. **Return of Company Property.** On termination of my employment with the Company for any reason, I will promptly deliver to the Company all Company documents, records, files, notebooks, manuals, letters, notes, reports, customer and supplier lists, cost and profit data, apparatus, drawings, blueprints, and any other material of the Company, including all materials pertaining to Confidential Information developed by me or others, and all copies of such materials, whether of a technical, business or fiscal nature, that are in my possession or under my control.

3. **Inventions.**

   a. Ownership. I agree that the Company owns any idea, invention, discovery or improvement (collectively "invention" or "inventions"), whether patentable or not, conceived or made by me alone or with others at any time during my employment, and I hereby assign and will assign to the Company all rights I have or may acquire in such inventions and agree to execute any and all applications, assignments or other instruments relating to such inventions that the Company deems necessary. Notwithstanding the foregoing, I understand that the Company will not own and that I am not obligated to assign to the Company any invention that is developed entirely on my own time without using any of the Company's equipment, supplies, facilities and/or trade secret information *unless* such invention (a) relates in any way to the Company's Business (as defined in Subsection 11(f) below) at or prior to the time of conception of the invention or to the Company's demonstrably anticipated research or development at the time of conception of the invention, or (b) results in any way from my work at the Company. I will promptly disclose to the Company any and all inventions, whether patentable or not, conceived or made by me alone or with others at any time during my employment, including those that I believe are not required to be assigned to the Company, for the purpose of determining the parties' respective rights to such inventions. These obligations will continue beyond the termination of my employment with respect to inventions conceived or made by me during my employment with the Company.

   b. Invention Assignment. I understand that I will not be obligated to assign to the Company any invention that is wholly conceived or made by me after the termination of my employment, except that I will be so obligated and will and do hereby assign such invention if the invention was conceived or made using any of the Company's Confidential Information. I also understand and agree that any invention relating to the Company's Business at any time during my employment, its demonstrably anticipated research or development at the time of termination of employment, or to the duties of my employment while employed with the Company that I reduce to practice or disclose to third parties within one year after leaving the employ of the Company will be presumed to have been conceived or made during my employment with the Company and, if such is not the case, that I will have the burden of proving the contrary.

   c. Prior Inventions. All inventions that were made or acquired by me for my personal account prior to my employment by the Company and that relate to the Company's Business at the time of commencement of my employment or that relate to the anticipated duties of my employment with the Company will be deemed "Prior Inventions." I have described on *Appendix A* to this Agreement all Prior Inventions, and I will not assert against the Company any rights in any other Prior Inventions not listed on *Appendix A*.

   d. Copyrights. I further acknowledge and agree that the Company is the owner of the copyright in any work that I produce within the scope of my employment by the Company. I agree to execute any and all assignments and other instruments relating to such copyrights that the Company deems necessary.

Eff. 5/2017 (MLO)

- 2 -

Case 1:24-cv-01038-UA-JEP    Document 48-8    Filed 06/18/26    Page 3 of 8

e.  Future Cooperation. At the Company's request and expense, I agree to assist in protecting the Company's rights in any idea, discovery, invention, improvement or copyright owned by or to be assigned to the Company pursuant to this Agreement.

f.  Company's Consent. If the Company does not wish to retain ownership of any such idea, discovery, invention or improvement, or copyright, owned by and/or to be assigned to the Company pursuant to this Agreement, and I wish to use or develop the same for my own benefit, I will obtain the Company's written permission before I do so.

4.  **Restrictive Covenants.**

a.  Duties to Others. I represent and warrant that my employment with the Company does not and will not breach any agreement or duty I have to anyone else, including any agreement or duty to keep in confidence confidential information belonging to others or any non-competition or similar agreement. I agree not to disclose to the Company or use on its behalf any confidential information belonging to others.

b.  Full Force and Effect. If any provision of this Agreement is declared void or unenforceable by a court of competent jurisdiction, all other provisions shall nonetheless remain in full force and effect.

c.  During my Employment. While employed by the Company, I will not, without the express written consent of an authorized representative of the Company, (i) perform services within the Territory (as defined below) for any Competing Business (as defined below), whether as an employee, officer, director, consultant, agent, contractor or in any other capacity, (ii) own or beneficially own an equity interest in a Competing Business, (iii) request any customers or suppliers of the Company to curtail or cancel their business with the Company, or (iv) induce or attempt to influence any employee of the Company to terminate his or her employment with the Company.

d.  Post-Separation For a period of one (1) year following the termination of my employment with the Company, I will not, without the express written consent of an authorized representative of the Company, (i) perform services within the Territory for any Competing Business, whether as an employee, officer, director, consultant, agent, contractor or in any other capacity, that are the same or similar to any services that I provided to the Company or that otherwise utilize skills, knowledge and/or business contacts that I utilized while providing services to the Company, (ii) own or beneficially own an equity interest in a Competing Business, (iii) request any customers or suppliers of the Company, who were customers or suppliers of the Company during my employment with the Company, to curtail or cancel their business with the Company, or (iv) induce or attempt to influence any employee of the Company to terminate his or her employment with the Company. These obligations will continue for the specified period regardless of whether the termination of my employment was voluntary or involuntary or with or without cause.

e.  Passive Investments. As an exception to the above restrictions, I may own passive investments in Competing Businesses (including, but not limited to, indirect investments through mutual funds), provided the securities of the Competing Business are publicly traded and I do not own or control more than two percent (2%) of the outstanding voting rights or equity of the Competing Business.

f.  Government Agency, University or Non-Profit. As a further exception to the above restrictions, following termination of my employment by the Company I may be employed by or otherwise provide services to a government agency, university or other nonprofit organization, provided that

Eff. 5/2017 (MLO)

- 3 -

Case 1:24-cv-01038-UA-JEP    Document 48-8    Filed 06/18/26    Page 4 of 8

I do not participate in or have any responsibilities relating to any program directly or indirectly funded or sponsored by or affiliated with any Competing Business.

g. Definitions.

1. "Company," as used in this Agreement, includes any and all divisions, subsidiaries and affiliates of Cree, Inc.

2. "Competing Business" means any corporation, partnership, university, government agency or other entity or person (other than the Company) engaged in any part of the Company's Business. including the development, manufacture, marketing, distribution, research, or sale of any product, service, or technology that Company is developing, manufacturing, marketing, distributing, researching, or selling as of the date of my separation from Company (except as to paragraph 4(a) for which "Company's Business" shall mean the Company's business as of the time I am alleged to have been in breach of the Agreement). As of the date of this Agreement, I acknowledge that the Company's Business includes the following products, services, and technologies: (1) silicon carbide (SiC) materials for electronic applications, (2) SiC materials for gemstone applications, (3) AIII nitride materials for electronic applications, (4) light emitting diode (LED) devices and components, (5) power semiconductor devices made using SiC and/or AIII nitride materials and components and modules incorporating such devices, (6) radio frequency (RF) and microwave devices made using SiC and/or AIII nitride materials and components and modules incorporating such devices, (7) LED backlights for liquid crystal displays (LCDs), (8) lighting products, modules, fixtures or devices incorporating any of the above materials or technology, (9) sensors, drivers, networking, and controls related to lighting products, and (10) other semiconductor devices made using SiC and/or AIII nitride materials and components incorporating such devices. I understand that during my employment with the Company, the Company's Business may expand or change and, I agree, that any such expansions and changes shall expand or contract the definition of the Company's Business and my obligations under this Agreement accordingly.

If my employment with Company was limited to certain products, product lines, technologies, markets, or a Company division, then "Company's Business" shall further be limited to the products, product lines, technologies, markets or divisions with which I worked during the two (2) years prior to my separation from Company (or, if still employed by Company, during the immediately preceding two (2) years).

3. The term "Territory" shall mean the United States.

I agree that in the event a court determines that the length of time or the geographic area or activities prohibited under this Section are too restrictive to be enforceable, the court may reduce the scope of the restriction to the extent necessary to make the restriction enforceable.

5. **Severability.** If any provision of this Agreement is declared void or unenforceable by a court of competent jurisdiction, all other provisions shall nonetheless remain in full force and effect. I agree that in the event a court determines that any of the above-described restrictive covenants are overbroad or otherwise unenforceable, the court may modify the restriction(s) to the extent necessary to make the restriction(s) enforceable.

Eff. 5/2017 (MLO)

- 4 -

6. **Obligations Owed to Others**. I represent and warrant that my employment with the Company does not and will not breach any agreement or duty I have to anyone else, including any agreement or duty to keep in confidence confidential information belonging to others or any non-competition or similar agreement. I agree not to disclose to the Company or use on its behalf any confidential information belonging to others.

7. **Survivability**. My obligations under this Agreement will continue following any termination of my employment, whether voluntary or involuntary.

8. **At-Will Employment**. Nothing in this Agreement shall be construed to imply any obligation on the part of the Company to employ me for a specific or indefinite term, and no such commitment will be binding on the Company unless set forth in a separate written agreement signed by an executive officer of the Company.

9. **Assignability**. This Agreement is for the benefit of the Company and shall be enforceable by Company as well as its successors, its assigns, and any purchaser of a majority of its assets. I consent to the assignment of this Agreement to any such person or entity. Further, this Agreement shall be binding upon my successors, executors, administrators and other legal representatives.

10. **Choice of Law**. The laws of the State of North Carolina shall govern this Agreement as if executed and wholly performed within such State.

11. **Remedies**. I hereby acknowledge and agree that the services rendered by me to Company, and the information disclosed to me during and by virtue of my employment, are of a special, unique and extraordinary character. I further acknowledge and agree that the breach of this Agreement will cause Company irreparable injury and damage, and consequently, Company shall be entitled to, in addition to all other remedies available to it, injunctive and equitable relief to prevent a breach of this Agreement, or any part of it, and to secure the enforcement of this Agreement.

12. **Acknowledgments**. I agree that the restrictions contained in this Agreement are reasonably necessary for Company's protection and will not impose an undue hardship on me.

13. **Prior Breach and Waiver**. Neither Company's prior breach of this Agreement nor Company's prior breach of any other obligation owed to me shall release me from my obligations under this Agreement nor shall it preclude Company from seeking enforcement of this Agreement through an injunction or from seeking damages related to the breach of this Agreement. Any waiver of any term of this Agreement shall not be considered a waiver of any other term of this Agreement.

14. **Modifications**. Any modification to this Agreement must be made in writing and signed by Company and me.

15. **Subsequent Positions**. In the event I move into a different position within the Company or into a position with any of the Company's parents, subsidiaries, or affiliated companies, I agree that this Agreement shall apply to that position and that the parties shall not have to execute a new agreement. If the new position is with a parent, subsidiary, or affiliate, "Company" shall be defined as that parent, subsidiary, or affiliate.

16. **Other Obligations**. I understand that the obligations and restrictions set forth in this Agreement are in addition to and not in lieu of any obligations or restrictions imposed upon me under any other law or statute including, but not limited to, any obligations I may owe under any law governing trade secrets,

Eff. 5/2017 (MLO)

Case 1:24-cv-01038-UA-JEP    Document 48-8    Filed 06/18/26    Page 6 of 8

any common law duty of loyalty, or any fiduciary duty. No time or geographic restriction provided above shall affect the availability or scope of protection afforded to Company's trade secrets.

17. **Other Notices.**

   a. <u>Notice of Immunity from Liability for Confidential Disclosure of a Trade Secret to the Government or in a Court Filing.</u> Notwithstanding anything herein to the contrary, under the Federal *Defend Trade Secrets Act of 2016*, an individual may not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding if the individual files any document containing the trade secret under seal and does not disclose the trade secret except pursuant to court order. Nothing herein is intended, or should be construed, to affect the immunities created by the *Defend Trade Secrets Act of 2016.*

   b. <u>Notice of Whistleblower Protections.</u> These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

   c. <u>Government Investigations.</u> I understand that nothing in this Agreement shall be construed to prevent me from communicating or cooperating with any government agency regarding matters that are within the agency's jurisdiction.

   d. <u>National Labor Relations Act.</u> I understand that nothing in this Agreement shall be read to prohibit me from sharing information about the terms and conditions of my employment with others or from sharing any information protected by the National Labor Relations Act.

   e. <u>Forms.</u> The limitation in this Agreement shall not contravene requirements applicable to Standard Form 312, Form 4414, or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

Eff. 5/2017 (MLO)

Case 1:24-cv-01038-UA-JEP    Document 48-8    Filed 06/18/26    Page 7 of 8

This Agreement constitutes the complete and exclusive statement of my agreement with the Company relating to the subject matter addressed in this Agreement and supersedes any prior agreement concerning such subject matter.

I have signed this Employee Agreement Regarding Confidential Information, Intellectual Property and Noncompetition under seal on the date shown below.

EMPLOYEE:

_____ (SEAL)
*Employee's Signature*
Print Name: ___PAUL WHEELER___
Date: ___11/05/2018___

---

## APPENDIX A

I represent that I have identified below all inventions, discoveries, ideas and improvements relating to the Company's Business at the time of commencement of my employment by the Company or relating to the anticipated duties of my employment with the Company in which I claim ownership and that were made or acquired by me for my own account prior to my employment by the Company. *[Attach additional page, if necessary.]*

*Brief Description of Inventions*      *Date Made or Acquired*
*(Include title and numbers of*
*any applicable patents)*

_____ (SEAL)
*Employee's Signature*
Print Name: ___PAUL WHEELER___
Date: ___11/05/2018.___

Eff. 5/2017 (MLO)

- 7 -

Case 1:24-cv-01038-UA-JEP    Document 48-8    Filed 06/18/26    Page 8 of 8