# EXHIBIT 14



## AGREEMENT AND GENERAL RELEASE

Wolfspeed, Inc. ("Wolfspeed") and Sascha Dern("Employee"), Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Last Day of Employment.** Employee's last day of employment with Wolfspeed was July 4, 2025("Effective Termination Date").

2. **Consideration.** In consideration for signing this Agreement and General Release, and complying with its terms, Wolfspeed agrees:

a. to pay to Employee **$88,714.34**, less lawful deductions, representing 18 weeks of severance, in a lump sum within thirty (30) calendar days after Wolfspeed receives a signed copy of this Agreement and General Release and the expiration of the revocation period described herein, whichever occurs later;

b. to pay the Company's COBRA provider 5 months of the employer portion of COBRA continuation expenses as soon as administratively possible, after the Employee's election of COBRA continuation coverage and provided Wolfspeed has received a signed copy of this Agreement and General Release, whichever is later. During this time, Employee will be responsible for paying the employee portion of the expense, directly to the provider. All COBRA contribution obligations shall cease on the earlier of the date Employee terminates COBRA continuation coverage, fails to pay the employee portion of the coverage costs, becomes eligible for new group healthcare coverage or exhausts the maximum COBRA contribution period set forth above. Employee acknowledges these payments will be made only if Employee properly and timely elects to continue health coverage under Wolfspeed's Health Benefits Plan in accordance with the continuation requirements of COBRA, following the Effective Termination Date. After the expiration of the specified period, Employee shall be entitled to choose to continue such COBRA coverage for the remainder of the COBRA period, at Employee's own expense. Nothing in this Agreement and General Release shall constitute a guarantee of COBRA continuation coverage or benefits. Employee shall be solely responsible for all obligations in electing COBRA continuation coverage and taking all steps necessary to qualify for and maintain such coverage; and

c. to offer Employee 3 months of outplacement services, at no cost to Employee, provided by Right Management via their Elevate program. Right Management will be paid directly by Wolfspeed for providing this service to Employee. Employee may not receive a cash payment in lieu of utilizing these services.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph 2 above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein. Employee further acknowledges and agrees that if Employee fails to fulfill _any_ of the promises contained herein and/or any other agreements Employee has previously entered into with the Company (including the Restricted Stock Unit ("RSU") award agreements), including but not limited to those related to non-competition, non-solicitation, confidentiality, and/or non-disparagement, all Consideration referenced in paragraph 2 above is subject to immediate repayment to the Company upon written demand of the Company. The Company in its sole discretion may also claw back or seek repayment of any amounts granted to or received by Employee under any relevant agreement.

4. **General Release of All Claims, Claims Not Released, and Related Provisions.**

a. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges Wolfspeed, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers,

2



successors, and assigns, and their current and former employees, attorneys, officers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act of 1986 ("IRCA");

- The Americans with Disabilities Act of 1990 ("ADA"), including the ADA Amendments Act of 2008;

- The Age Discrimination in Employment Act of 1967 ("ADEA");

- The Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act");

- The Fair Credit Reporting Act ("FCRA");

- The Family and Medical Leave Act of 1993 ("FMLA");

- The Equal Pay Act of 1963 ("EPA");

- any and all applicable state labor and employment laws;

- any other federal, state or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law of any state relating to employment, including but not limited to claims for wrongful discharge, defamation, invasion of privacy, infliction of emotional distress, negligence, interference with contract;

- any public policy, contract, tort, or common law;

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters; and/or

- any and all claims related to equity, including but not limited to granting, vesting, revocation, and cancellation.

b. **Claims Not Released.** Employee is not waiving any rights they may have to: (a) their own vested accrued employee benefits under Wolfspeed's health, welfare, or retirement benefit plans as of the Effective Termination Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

3

8/7/2025



c. **Mistake in Fact/Voluntary Consent.** After the execution of this Agreement, Employee may discover facts different from or in addition to those Employee now believes to be true with respect to the claims released in this Agreement. Notwithstanding such discovery, this Agreement shall be and remain in full force and effect in all respects, and Employee intends to fully, finally, and forever settle and release all of the claims released in this Agreement.

d. **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding, or other proceeding before any federal, state, or local government agency (e.g., the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), the U.S. Securities and Exchange Commission ("SEC"), etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.

e. **Collective/Class Action Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim brought against Wolfspeed or in which any other Releasee identified in this Agreement is a party.

5. **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Wolfspeed.

Employee affirms that Employee has reported all hours worked (if applicable) as of the date Employee signs this release and has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled. Employee affirms that Employee has been granted any leave to which Employee was entitled under FMLA or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases. Employee also affirms that Employee has not divulged any proprietary or confidential information of Wolfspeed and will continue to maintain the confidentiality of such information consistent with Wolfspeed's policies and Employee's agreement(s) with Wolfspeed and/or common law.

Employee further affirms that Employee is not aware of, nor has been retaliated against for reporting any allegations of wrongdoing by Wolfspeed or its officers, including any allegations of corporate fraud. Employee affirms that, to the best of Employee's knowledge, Wolfspeed has provided accurate and transparent financial information to its shareholders and the public and abided by all provisions of all applicable laws and regulations, including The Sarbanes-Oxley Act of 2002. Both Wolfspeed and Employee acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state, or local governmental agency.

Employee affirms that all of Wolfspeed's decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin, or any other classification protected by law.

6. **Confidentiality and Return of Property.** Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement and General

4

8/7/2025



Release, except to Employee's spouse, tax advisor, and/or an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement and General Release.

Employee shall not at any time after Employee's employment terminates disclose, use, or aid third parties in obtaining or using any confidential or proprietary information belonging to Wolfspeed or such information of its parents, subsidiaries, or affiliates. Confidential or proprietary information is information relating to Wolfspeed, parent, subsidiaries, or affiliates or any aspect of its business which is not generally available to the public, Wolfspeed's competitors, or other third parties, or ascertainable through common sense or general business or technical knowledge. Nothing in this Agreement shall relieve Employee from any obligations under any previously executed confidentiality, proprietary information, non-compete, non-solicitation, or secrecy agreements.

Employee affirms that Employee has returned all of Wolfspeed's property, documents, and/or any confidential information in Employee's possession or control. All records, files, or other materials maintained by or under the control, custody, or possession of Wolfspeed or its agents in their capacity as such shall be and remain Wolfspeed's property. Employee shall: (i) return all Wolfspeed property (including, but not limited to, credit cards; keys; company car(s); cell phone(s); computer hardware and software; records, files, documents, company manuals, and other documents in whatever form they exist, whether electronic, hard copy, or otherwise and all copies, notes, or summaries thereof) which Employee received in connection with Employee's employment; (ii) bring all such records, files, and other materials up to date before returning them, if requested to do so; and (iii) fully cooperate with Wolfspeed in winding up Employee's work and transferring that work to those individuals designated by Wolfspeed, if requested to do so. Employee acknowledges that they will not receive payment as outlined above until all such property has been returned to Wolfspeed in satisfactory condition.

Employee also affirms that Employee is in possession of all of Employee's property that Employee had on or at Wolfspeed's premises and that Wolfspeed is not in possession of any of Employee's property.

7. **Non-Disparagement.** Employee represents and warrants that since receiving this Agreement, Employee has not: (i) made, and going forward will not make, disparaging, defaming, or derogatory remarks about Wolfspeed or its products, services, business practices, directors, officers, managers, or employees to anyone; nor (ii) taken, and going forward will not take, any action that may impair the relations between Wolfspeed and its vendors, customers, employees, or agents or that may be detrimental to or interfere with, Wolfspeed or its business. Employee understands and agrees that any breach of this provision will result in irreparable damage to Wolfspeed, justifying injunctive relief, as well as recovery of other damages. Employee agrees to direct any future employment reference requests to Wolfspeed's third-party vendor, which will confirm only Employee's former title and dates of employment with Wolfspeed.

8. **Cooperation.** Employee will cooperate with Releasees and their counsel in connection with any past, current, or future investigation, administrative or regulatory proceeding, or litigation relating to any matter in which Employee was involved or of which Employee has knowledge as a result of Employee's employment with any of the Releasees. Employee specifically agrees to make themselves available at reasonable times and places to assist the Releasees in the defense of any lawsuits or claims asserting claims against any Releasee, including providing truthful and accurate information and/or testimony.

9. **Eligibility Requirements/Applicable Data.** In order to be eligible to participate in, and be eligible to receive severance in accordance with, Wolfspeed's severance program, the following eligibility requirements must be met: (1) Employee must be in an eligible position; (2) in good standing; and (3) terminated as part of the reorganization and not "for cause". Business needs, job duties, individual skills, job location, and individual performance, among other factors, were also considered as part of the analysis in determining who would be selected for separation. Individuals who resign or who reject an offer for a similar position at the same rate of base pay are ineligible to participate in the program. Attached as Exhibit "A" is a list of the job titles and ages of all individuals in Employee's department or organizational unit who are eligible for/selected for separation as part

5

S.R.
8/7/2025



of Wolfspeed's restructuring. Attached as Exhibit "B" is a list of the job titles and ages of all individuals in Employee's department or organizational unit who are ineligible/were not selected for separation as part of Wolfspeed's restructuring.

10. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of North Carolina. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

11. **Non-Admission of Wrongdoing.** Wolfspeed and Employee agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind. Employee agrees to not seek reemployment with Wolfspeed unless expressly requested to do so in writing by the Chief Human Resources Officer of Wolfspeed.

12. **Amendment.** This Agreement and General Release may not be modified, altered, or changed except in writing and must be signed by both Wolfspeed and Employee wherein specific reference is made to this Agreement and General Release.

13. **Entire Agreement.** This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties except those related to confidentiality, covenants not to compete, etc. which are incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

14. **Additional Notices.** Notwithstanding anything herein to the contrary, under the Defend Trade Secrets Act of 2016 ("DTSA"), an individual may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is: (a)(i) made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (a)(ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding if the individual files any document containing the trade secret under seal and does not disclose the trade secret except pursuant to court order. Nothing herein is intended, or should be construed, to affect the immunities created by the DTSA.

These provisions are consistent with and do not supersede, conflict with, or otherwise alter the Employee's obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

The limitations in this or any other applicable Policy shall not contravene requirements applicable to Standard Form 312, Form 4414, or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

6

S.R.

01 71 2025



15.    **Counterparts and Facsimile/Digital Signatures.** This Agreement may be executed in any number of counterparts, each of which will be deemed to be an executed Agreement and each of which shall be deemed to be one and the same instrument.  A facsimile or digital signature shall be treated as an original signature for all purposes.

EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO FORTY-FIVE (45) CALENDAR DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.

EMPLOYEE MAY REVOKE THIS AGREEMENT AND GENERAL RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.  ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO MARGARET CHADWICK, SVP OF HUMAN RESOURCES, AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE."  THE REVOCATION MUST BE PERSONALLY DELIVERED TO MARGARET CHADWICK, OR MAILED TO MARGARET CHADWICK AT WOLFSPEED, INC., 4600 SILICON DRIVE, DURHAM, NORTH CAROLINA 27703 AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO FORTY-FIVE (45) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

Wolfspeed, Inc.

By: _____
Sascha Dern

By: _____
Margaret Chadwick
SVP of Human Resources

Date: 8/7/2025

Date: 08/11/2025

7



**EXHIBIT A**
Job titles and ages of all individuals eligible for/selected for
separation in Employee's department or organizational unit.

Director Product Marketing V   54

8

S.R.
8/7/2015



## EXHIBIT B
Job titles and ages of all individuals ineligible for/not selected for separation in Employee's department or organizational unit.

Director Product Marketing V   48

9

S.D.
8/7/2025