IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 1:24-cv-01038

WOLFSPEED, INC.,

        Plaintiff,

    vs.

NAVITAS SEMICONDUCTOR
CORPORATION, GENESIC
SEMICONDUCTOR LLC, PAUL
WHEELER, and SASCHA DERN,

        Defendants.

**PLAINTIFF WOLFSPEED INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUBSTITUTED SERVICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

    I.    Dern violates the non-competition and non-solicitation obligations in his
         contracts with Wolfspeed. ................................................................................ 2

    II.   Service through the Hague Convention will take six months to a year................. 6

    III.  Wolfspeed's efforts to serve Dern. .................................................................. 7

LEGAL STANDARD.................................................................................................... 10

ARGUMENT ............................................................................................................... 11

    I.    Email service through U.S.-based counsel is not prohibited by the Hague
         Convention............................................................................................... 12

    II.   Email service through U.S.-based counsel comports with due process. ............. 12

    III.  The circumstances warrant alternative service.................................................. 14

CONCLUSION ............................................................................................................ 15

CERTIFICATE OF COMPLIANCE............................................................................. 17

CERTIFICATE OF SERVICE....................................................................................... 18

ii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Affinity Tool Works, LLC v. Hangzhou Great Star Indus. Co.*,
603 F. Supp. 3d 274 (W.D.N.C. 2022) ............................................................... 10, 11, 14

*Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075 (9th Cir. 1999) ............................ 7

*Celgard, LLC. v. Shenzen Senior Tech. Material Co.*,
No. 3:20-cv-130-GCM, 2020 WL 2575561 (W.D.N.C. May 21, 2020) ....................... 10

*Enovative Techs., LLC v. Leor*, 622 Fed. App'x 212 (4th Cir. 2015) ............................... 10

*FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531 (E.D. Va. 2005) .............................. 10

*Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175 (S.D. Fla. 2012)............... 13

*In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423 (S.D.N.Y. 2009).................................. 7

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................. 12

*Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82 (D. Mass. 2022) ........................... 6

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)............................... 10

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)......................... 6, 12

*Williams v. Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. Va. 2005) ................................... 10

*WorldVentures Holdings, LLC v. Mavie*,
No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018) .................... 13

**Rules**

Fed. R. Civ. P. 4(f)(3) ....................................................................................................... 10

**Treaties**

Hague Convention on the Service Abroad of Judicial
and Extrajudicial Documents............................................................ 2, 6, 7, 8, 11, 12, 14

## <u>INTRODUCTION</u>

This action stems from Sascha Dern's breach of his non-competition and non-solicitation obligations to Wolfspeed. Having forced this litigation, Dern now seeks to frustrate it by avoiding service from Germany. A former Wolfspeed employee, he appears to reside in Germany after maintaining both a California and German residence during his employment. Wolfspeed has diligently pursued conventional service without success. Because those efforts have been futile, Wolfspeed seeks leave under Rule 4(f)(3) to effect service by a method reasonably calculated to provide actual notice.

This motion is necessary because Dern is actively evading accountability. As part of his separation agreement with Wolfspeed, he signed binding non-compete and non-solicitation covenants and accepted substantial consideration, including $88,714.34 in severance, COBRA coverage, stock unit awards, and outplacement services. He then did exactly what he was paid *not* to do. Within weeks, he joined Navitas, a direct competitor and co-defendant to the present action and began soliciting Wolfspeed's employees and customers in open violation of his agreements.

Having taken the money and breached his obligations, Dern now attempts to avoid the consequences by remaining abroad and refusing service while continuing his competing conduct. This is gamesmanship aimed to frustrate Wolfspeed's prosecution of its claims and make enforcement so burdensome that Wolfspeed abandons the effort altogether. He

1

cannot accept payment for these promises and then hide behind geography to escape enforcement.

The equities favor alternative service. Dern works for Navitas, and service through email on Navitas's U.S.-based counsel—who has already appeared in the present action, previously communicated with Wolfspeed on Dern's behalf, and also represents co-defendant Paul Wheeler—is reasonably calculated to provide prompt notice. Time is critical as Dern is reportedly soliciting Wolfspeed customers, and discovery and mediation deadlines are looming. Proceeding under the Hague Convention would unreasonably delay Wolfspeed's ability to obtain relief. The Court should not allow Dern to run out the clock. Rule 4(f)(3) exists to prevent precisely this tactic. For these reasons, Wolfspeed respectfully requests that the Court grant this Motion and do so on an expedited basis in advance of the parties' impending discovery and mediation deadlines.

## FACTUAL BACKGROUND

**I.     Dern violates the non-competition and non-solicitation obligations in his contracts with Wolfspeed.**

Wolfspeed hired Dern as its Power Modules Product Director in February 2021. Second Am. Compl., ECF No. 48 ¶ 69; Van Gorder Decl. ¶ 3. At the time, Mr. Dern listed his address as being in California. Van Gorder Decl. ¶ 3. As a condition of his employment, Dern executed an Employee Agreement Regarding Confidential Information, Intellectual Property and Noncompetition (the "Dern Employee Agreement"), dated January 21, 2021. ECF No. 48 ¶ 71; ECF No. 48-12.

2

In the Dern Employee Agreement, Dern covenanted that for a period of one year following the termination of employment, he would not "perform services . . . for any Competing Business, whether as an employee, officer, director, consultant, agent, contractor, or in any other capacity…" ECF No. 48-12 ¶ 4(d). He also covenanted that he would not "request any customers or suppliers of the Company, who were customers or suppliers of the Company during my employment with the Company, to curtail or cancel their business with the Company." *Id.*

In addition, Wolfspeed granted Dern Restricted Stock Units ("RSUs"), which were memorialized in Restricted Stock Unit Award Agreements ("RSU Agreements"). ECF No. 48 ¶¶ 50, 51. Section 11 of the RSU Agreements states that Wolfspeed may "cancel and cause to be forfeited any RSUs not previously vested or released" if Dern engages in any "Detrimental Activity" within one-year post-employment at Wolfspeed. *Id.* ¶ 53; ECF No. 48-7 § 11(b). "Detrimental Activity" is defined as any activity that breaches the terms of any restrictive covenants in any agreement between Wolfspeed and Dern. *Id.*

In April 2022, Wolfspeed accommodated Dern's request to work from Germany for part of the year for personal reasons. ECF No. 48 ¶ 76; ECF No. 48-13; Van Gorder Decl. ¶ 4. The arrangement required Dern to travel back to the United States periodically. ECF No. 48-13 at 2; Van Gorder Decl. ¶ 4. When in the United States, Dern was allowed to work remotely from his residence in California. ECF No. 48-13 at 2; Van Gorder Decl. ¶ 4.

3

On or about July 4, 2025, Wolfspeed terminated Dern's employment as part of a reduction-in-force. ECF No. 48 ¶ 79; Van Gorder Decl. ¶ 5. On August 7, 2025, Dern executed the Dern Separation Agreement, under which he accepted a lump sum severance payment of $88,714.34, representing 18 weeks of pay, plus five months of COBRA coverage and three months of outplacement services. ECF No. 48 ¶ 79; ECF No. 48-14 ¶ 2. Dern agreed that he was receiving this consideration only in exchange for fulfilling the promises in the Dern Employee Agreement and RSU Agreements, including his post-term non-compete and non-solicitation obligations. ECF No. 48 ¶ 80; ECF No. 48-14 ¶ 3. Dern further agreed that if he failed to fulfill any of these promises, all consideration was "subject to immediate repayment to the Company upon written demand…" ECF No. 48-14 ¶ 3.

In late July 2025, while seeking new employment, Dern engaged in multiple discussions with Wolfspeed's Manager of Legal Administration, Allyson Van Gorder, regarding the scope of his non-compete and non-solicitation obligations. Van Gorder Decl. ¶ 6. Specifically, Dern called Ms. Van Gorder multiple times to discuss the scope of his non-compete and asked in emails which state's law applied to his contractual obligations. *Id.* & Ex. A, B. Dern agreed he would notify Wolfspeed of any prospective employment that might implicate those covenants. Van Gorder Decl. ¶ 8. Despite his clear awareness of those obligations, Dern never followed through. After these initial conversations, he made no effort to disclose or seek guidance regarding employment or conduct that could violate his agreements with Wolfspeed. Van Gorder Decl. ¶ 9.

4

In July 2025, unbeknownst to Wolfspeed, Dern accepted a position as Navitas's Vice President of Sales for Europe, the Middle East, Africa, and India. ECF No. 48 ¶ 72. Dern's position at Navitas is identical (or nearly identical) to his position at Wolfspeed in violation of Section 4(d) of the Dern Employee Agreement, the RSU Agreements, and Section 3 of the Dern Separation Agreement. *Id.* ¶ 73. Further, in his role with Navitas, Dern is reportedly soliciting Wolfspeed's current customers and employees in violation of Paragraphs 1 and 4(d) of the Dern Employee Agreement and the RSU Agreements. *Id.* ¶¶ 74–75; ECF No. 48-7 § 11 *et. seq.*

Given this conduct, Dern is in breach of all three of his agreements with Wolfspeed. Wolfspeed brings this action against Dern, Navitas, and Paul Wheeler (another current-Navitas and former-Wolfspeed employee acting in violation of his non-compete and non-solicitation agreements with Wolfspeed) asserting claims including breach of contract and wrongful interference with contractual relationships. ECF No. 20. Wolfspeed has successfully served Navitas[1] and Wheeler with process in this action as both are in the United States. ECF Nos. 24, 25. Additionally, counsel from Bell, Davis & Pitt, P.A. represents *both* Navitas and Wheeler in the present action, and have confirmed that they are in communication with Dern and would almost certainly represent him if Wolfspeed attains service. ECF Nos. 5, 18, 26, 27; Lindahl Decl. ¶ 5; Roche Decl. ¶¶ 6, 7. However,

---

[1] Wolfspeed also served GeneSic Semiconductor LLC ("GenSic"), a defendant in the present action. GenSic is wholly owned by Navitas. For purposes of this memorandum, the entity referred to as "Navitas" includes its wholly owned subsidiary, GeneSic.

despite diligent efforts, Wolfspeed has been unable to serve Dern because he resides in Germany, and his trips to the U.S. for work are unpredictable. Wolfspeed has no way of knowing when Dern enters the country or where he stays while here, making service through his intermittent U.S. travel impracticable. Van Gorder Decl. ¶ 10; Roche Decl. ¶ 5. Dern also has not voluntarily accepted service through Bell Davis. Lindahl Decl. ¶ 7; Roche Decl. ¶ 8. A summons issued by a United States court cannot reach Dern unless Wolfspeed initiates a lengthy, time-consuming service process through the Hague Convention, or if this Court grants substituted service under Rule 4(f)(3).

**II.  Service through the Hague Convention will take six months to a year.**

Because Dern is currently in Germany, extraterritorial service of process must be effectuated through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698–99 (1988). The Hague Convention is a multilateral treaty that establishes procedures for transmitting judicial documents from one signatory country to another. *Id.* at 698. Germany is a signatory to the Hague Convention. *Id.* Under the Hague Convention, service on a defendant located in Germany typically requires transmitting documents through Germany's designated "Central Authority," which then arranges for service according to German domestic law. *Id.* at 698–99. This process in Germany is notoriously "slow and stringent." *See Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82, 92 (D. Mass. 2022) (citation omitted).

Service through the Hague Convention's Central Authority mechanism routinely takes six months to a year or longer, and in some cases can take several years. *See In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 437 (S.D.N.Y. 2009) (documenting six-plus years of Central Authority inaction on service to a German defendant); *see also Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1077 (9th Cir. 1999) (recognizing that Germany's Central Authority imposes no time limit on service of process, that plaintiffs lose control of service once submitted to the Central Authority, and that central authorities can and do take significantly longer than 90 days).

## III. Wolfspeed's efforts to serve Dern.

Wolfspeed has diligently pursued service on Dern through conventional means, including personal service, voluntary service, and investigating service via the Hague Convention process, to no avail. Wolfspeed's efforts to serve Dern include the following:

- In January 2026, the Court issued a summons to Dern. ECF No. 21-1. Wolfspeed attempted to serve the summons at Dern's Cayucos, California address, as listed on his Long-Term International Arrangement Letter with Wolfspeed. ECF No. 48-13; Lindahl Decl. ¶ 4. Despite three attempts, service at this address was unsuccessful because nobody was present. Lindahl Decl. ¶ 4.

- In February 2026, counsel for Wolfspeed asked Bell Davis if it would voluntarily accept service on Dern's behalf after Bell Davis stated it was "95 percent" likely to be representing Dern in the present action. Lindahl Decl. ¶ 5. Bell Davis said

7

it would follow up on whether it would accept service, but never did despite multiple inquiries. *Id.*

- In March 2026, counsel for Wolfspeed investigated the international service process through the Hague Convention to attempt to serve Dern in Germany. Lindahl Decl. ¶ 6.  Specifically, counsel for Wolfspeed contacted a third-party vendor offering international service of process, but was unable to obtain the information it needed. *Id.* Counsel then contacted a second third-party vendor, from whom it learned that service through the Hague Convention would be a lengthy and expensive process, taking six to nine months or longer, and costing $8,200. *Id.*; Roche Decl. ¶ 9. The majority of the cost stemmed from translation services—specifically, translating the relevant filings from English to German, as required under German law. Lindahl Decl. ¶ 6.

- In May 2026, counsel for Wolfspeed again asked Bell Davis in person at a hearing whether it would accept service on behalf of Dern, to which Bell Davis stated it would let Wolfspeed know after this Court ruled on Wolfspeed's then-pending motion for leave to file a second amended complaint.[2] Lindahl Decl.

---

[2] The Court granted Wolfspeed's motion for leave to file a second amended complaint on June 10, 2025. ECF No. 46. However, as of the date of this filing, Bell Davis has still not stated that it would accept service on Dern's behalf. Roche Decl. ¶ 8.

¶ 7. Counsel for Wolfspeed emailed Bell Davis later in May asking if it would accept service on behalf of Dern, to no avail. *Id.*

- Also in May 2026, Wolfspeed attempted to serve Dern again by mailing the summons to Dern's Cayucos, California address and to Navitas's registered agent in Delaware, but these efforts were also unsuccessful. Lindahl Decl. ¶ 8.

- The Court reissued the summons to Dern on May 15, 2026. ECF No. 42.

- In June 2026, counsel for Wolfspeed[3] determined that Dern is currently in Germany based on publicly available information online. Roche Decl. ¶ 5. Counsel then attempted to determine when Dern might return to the United States so that personal service could be effected domestically. *Id.* This effort was unsuccessful. *Id.*

- On July 1, July 5, and July 7, 2026, Wolfspeed again attempted to serve Dern three times at his Cayucos, California address, but was again unsuccessful as Dern was not present at the address. Roche Decl. ¶ 4.

Given its repeated lack of success with traditional service methods, Wolfspeed now brings this motion for an order allowing it to employ alternative methods.

---

[3] On May 19 and 26, 2026, Smith Anderson appeared in this action on behalf of Wolfspeed. ECF Nos. 44, 45. Katten Muchin Rosenman LLP formally withdrew from the case on June 23, 2026. ECF No. 49.

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(f) governs service of process on individuals in a foreign country. Rule 4(f)(3) provides that service may be effected "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Courts have broad discretion to authorize alternative methods of service under this Rule, provided that the method ordered (1) is not prohibited by international agreement, and (2) comports with due process, such that it is reasonably calculated to give notice to the defendant. *Enovative Techs., LLC v. Leor*, 622 Fed. App'x 212, 214 (4th Cir. 2015). Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Id.* (*quoting Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). Additionally, "Rule 4(f) does not denote any hierarchy or preference for one method of service over another." *Id.*

Courts in this Circuit routinely authorize alternative service on defendants located in foreign countries where traditional methods have proven unduly burdensome and service on a U.S. agent is reasonably calculated to provide notice. *See Affinity Tool Works, LLC v. Hangzhou Great Star Indus. Co.*, 603 F. Supp. 3d 274, 278-79 (W.D.N.C. 2022); *Celgard, LLC. v. Shenzen Senior Tech. Material Co.*, No. 3:20-cv-130-GCM, 2020 WL 2575561 (W.D.N.C. May 21, 2020); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531 (E.D. Va. 2005); *Williams v. Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. Va. 2005).

10

Generally, courts view service on foreign defendants through the Hague Convention as being unduly burdensome given service can take months to years. *See Affinity Tool Works*, 603 F. Supp. at 276 (W.D.N.C. 2022) (granting motion for substituted service where going through Hague Convention had "the potential for one to two years' delay").

## **ARGUMENT**

The Court should grant this motion because service on Dern via email to Bell Davis (1) does not implicate the Hague Convention, and is therefore not prohibited by it, and (2) is reasonably calculated to provide notice to Dern. As his current employer, co-defendant Navitas is in regular contact with Dern and has ready access to his email address, phone number, and current location. Moreover, counsel at Bell Davis stated it was "95 percent" likely going to represent Dern in the present action and already represents *both* of Dern's co-defendants in this action arising from the same conduct. Lindahl Decl. ¶ 5. Even if Bell Davis does not formally represent Dern, it is clearly in contact with him about this action.

Wolfspeed has made diligent, good-faith efforts to serve Dern and to secure counsel's acceptance of service, all without success. *See supra* pp. 10–12. With the expiration of the non-compete and RSU obligations, impending discovery and mediation deadlines, and ongoing solicitation of Wolfspeed customers, delay only rewards Dern's avoidance. The Court should authorize substitute email service on Dern through his co-defendants' counsel at Bell Davis.

**I. Email service through U.S.-based counsel is not prohibited by the Hague Convention.**

Although Germany is a signatory to the Hague Convention, the Hague Convention does not prohibit alternative service under Rule 4(f)(3) so long as the method employed does not violate its terms. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705–06 (1988). In *Schlunk*, the Supreme Court held that the Hague Convention does not apply when process is served on a German entity by serving its domestic affiliate. 486 U.S. at 698. This is because the actual service occurs domestically, eliminating any international service trigger for the Hague Convention. *Id.* Similarly here, service on Dern through Bell Davis via email does not require "transmittal of documents abroad," and thus falls outside the scope of the Hague Convention. *Id.* at 700.

Accordingly, because the Hague Convention is not implicated, it cannot prohibit the method of service requested. The Court may authorize the requested alternative service under Rule 4(f)(3).

**II. Email service through U.S.-based counsel comports with due process.**

Due process requires that substituted service on foreign nationals be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Schlunk*, 486 U.S. at 705 (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The proposed method of service—specifically, email service through Dern's co-defendants' and employer's counsel at Bell Davis—satisfies this standard and is likely to

12

result in actual notice.

Although Dern has not yet appeared through counsel in this action, counsel at Bell Davis has been in contact with Dern and already appeared on behalf of *both* Navitas and Wheeler. ECF Nos. 18, 26; *see* Lindahl Decl. ¶ 5; Roche Decl. ¶¶ 6, 7. The claims against Dern are inextricably intertwined with the claims against Navitas: Navitas is alleged to have wrongfully interfered with Wolfspeed's contractual relationships with Dern and Wheeler by hiring them in violation of their non-compete agreements. Second Am. Compl. ¶¶ 122–29. Further, Bell Davis stated it was "95 percent" likely to represent Dern in the present action, demonstrating that it is already in contact with him. Lindahl Decl. ¶ 5.

Further, Dern is a current, high-ranking Navitas employee. Second Am. Compl. ¶¶ 72–74. Navitas undoubtedly possesses Dern's email address, telephone number, and current physical address(es). Bell Davis can readily transmit the summons and complaint to Dern through Navitas's ordinary business channels. Courts have recognized that service through counsel is appropriate and common precisely because it "erases any material doubt that a defendant will be provided notice of [the] suit." *WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018) (cleaned up); *see also Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012) (compiling cases where service under Rule 4(f)(3) through domestic counsel satisfied due process and was necessary to prevent delays in litigation). Here, the

relationship between Dern and his employer Navitas makes it certain that service through Bell Davis will reach Dern.

Because email service on Bell Davis will undoubtedly result in actual notice to Dern, this proposed means of alternative service does not offend due process. Accordingly, the Court may authorize alternative service under Rule 4(f)(3).

## III.     The circumstances warrant alternative service.

Plaintiff has made diligent efforts to serve Dern through conventional means without success. *See supra* pp. 10–12. Dern is aware of this litigation, as evidenced by the fact that counsel at Bell Davis has been in contact with counsel for Wolfspeed about Dern's interests. Roche Decl. ¶ 7. And Dern is aware of his non-compete and non-solicitation covenants, as evidenced by his numerous discussions with Ms. Van Gorder. Van Gorder Decl. ¶ ¶ 6, 7 & Ex. A, B. Requiring Wolfspeed to proceed with service through the Hague Convention would cause unnecessary delay and expense, particularly where alternative means are reasonably calculated to provide actual notice. Service through the Hague Convention is time-consuming, often taking several months or more, and may be unsuccessful where, as here, the defendant is actively evading service. See *Affinity Tool Works*, 603 F. Supp. 3d at 276 (granting plaintiff's motion for substituted service where going through Hague Convention had "the potential for one to two years' delay"). In this case, requiring service through the Hague Convention will likely necessitate a second,

duplicative mediation solely as to Dern, because the Hague process is unlikely to be completed before the parties' current mediation and discovery deadlines.

Further, Wolfspeed urgently needs to serve Dern so that it may seek appropriate relief. Wolfspeed alleges that Dern is soliciting its customers. Second Am. Compl. ¶ 79; Dern Employee Agreement ¶ 4(d). The Court should not permit Dern to evade liability on his contractual obligations by escaping service from Germany.

Under these circumstances, the Court should authorize alternative service to ensure this case can proceed without further undue delay.

## CONCLUSION

Wolfspeed respectfully requests an order granting its Expedited Motion for Substituted Service under Rule 4(f)(3) for Defendant Sascha Dern and allowing service via email to Defendants Navitas and Wheeler's U.S. counsel at Bell Davis.

15

July 17, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

/s/ *Edward F. Roche*

Edward F. Roche (N.C. Bar No. 55434)
eroche@smithlaw.com
Hope C. Garber (N.C. Bar No. 59501)
hgarber@smithlaw.com
Post Office Box 2611
Raleigh, NC 27602-2611
Tel.:   (919) 821-1220
Fax:   (919) 821-6800

*Attorneys for Plaintiff Wolfspeed, Inc.*

16

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.3(d)(1), I certify that this memorandum contains no more than 6,250 words (exclusive of case caption, cover pages, any index, table of contents, table of authorities, signature blocks, or any required certificates) as reported by the word-processing software used to prepare this brief.

July 17, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP

/s/ *Edward F. Roche*
Edward F. Roche

17

# CERTIFICATE OF SERVICE

I certify that I electronically filed this document with the Clerk of Court using the

CM/ECF System, which will send notification of the filing to all counsel of record.

July 17, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

/s/ *Edward F. Roche*
Edward F. Roche

18