# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WOLFSPEED, INC.,

     Plaintiff,

v.

NAVITAS SEMICONDUCTOR
CORPORATION,
GENESIC SEMICONDUCTOR LLC,
PAUL WHEELER, and SASCHA DERN,

     Defendants.

Case No. 1:24-cv-01038

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE

Pursuant to Rule 4(f)(3) of the Federal Rules of Federal Procedure and LR7.3, Defendant Sascha Dern, through the undersigned counsel's limited appearance on his behalf, submits this Opposition to the Motion for Substituted Service filed by Plaintiff Wolfspeed, Inc. (Doc. 55). In opposing this Motion, Defendant Sascha Dern does not concede that this Court has personal jurisdiction over him, does not waive any other defenses that may be available to him under Rule 12(b)(2)-(5), and expressly reserves all such rights and defenses.

## INTRODUCTION

Defendant Sascha Dern ("Dern"), a citizen of the Federal Republic of Germany ("Germany") who resides in Starnberg, Germany, respectfully opposes the Motion for Substituted Service (the "Motion") filed by Plaintiff Wolfspeed, Inc. ("Wolfspeed") pursuant to Rule 4(f)(3) of the Federal Rules of Federal Procedure. Wolfspeed seeks a

- 1 -

court order authorizing substituted service of the summons and complaint via email on the undersigned counsel at the law firm of Bell, Davis & Pitt, PA ("Bell Davis Pitt"). In this regard, Wolfspeed's Motion is an attempt to bypass the mandatory requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), to which Germany is a signatory, and the protections afforded Dern under German law.

Contrary to Wolfspeed's assertions, Dern has not evaded service or engaged in gamesmanship or dilatory tactics. Wolfspeed, which employed Dern to work in Germany, has known Dern's established residential address in Starnberg, Germany all along and has simply not attempted to serve him there. Rather, Dern has done precisely what the law entitles him to do—he has exercised his right to wait for Wolfspeed to effectuate lawful service of process under the Hague Convention, does not concede that this Court has personal jurisdiction over him, and justifiably seeks to avail himself of the full protection of the laws of Germany, where he is a citizen and resident.

It is not disputed that Bell Davis Pitt has an attorney-client relationship with Dern relating to this action. However, Dern has not authorized Bell Davis Pitt to accept service on his behalf. Both the North Carolina Rules of Professional Conduct and fundamental principles of agency law preclude Bell Davis Pitt from accepting service without such authorization. Under the circumstances, the Court should decline to compel Bell Davis Pitt to accept service of process on behalf of Dern via email in contravention of its authority, the Rules of Professional Conduct, and international law.

**STATEMENT OF RELEVANT FACTS AND CASE**

On December 11, 2024, Wolfspeed commenced the above-captioned action by filing a Complaint against Defendants Navitas Semiconductor Corporation ("Navitas") and its subsidiary, GeneSiC Semiconductor LLC, alleging a single breach of contract claim related to an alleged agreement between the parties to purchase 5,000 bare silicon carbide wafers from Wolfspeed. (Doc. 1.) A year later, on January 6, 2026, Wolfspeed filed its first Amended Complaint to additionally allege employment-related claims related to added Defendants and former Wolfspeed employees Paul Wheeler and Sascha Dern, who allegedly breached the post-separation restrictive covenants in their employment agreements with Wolfspeed. (Doc. 20.)

On June 18, 2026, Wolfspeed filed its Second Amended Complaint to allege additional employment-related claims related to Navitas and GeneSiC's purported solicitation of Wolfspeed employees Priya Almelkar and Sandeep Misra. Wolfspeed used its Second Amended Complaint as a springboard for an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 32), which was denied by the Court because there was no evidence that Navitas ever offered employment to these Wolfspeed employees or that they left their employment with Wolfspeed (Doc. 40).

Dern is the only defendant at issue in the Motion presently before the Court. According to the allegations in the Second Amended Complaint, Dern was hired by Wolfspeed in or around February 2021. (Doc. 48 ¶ 69.) Wolfspeed alleges that Dern was subject to restrictive covenants contained in an Employee Agreement Regarding

- 3 -

Confidential Information, Intellectual Property and Noncompetition (the "Dern Employee Areement"). (*Id.* ¶ 71.) Wolfspeed terminated Dern's employment on July 4, 2025 as part of a reduction-in-force (*id*. ¶ 79) that coincided with Wolfspeed's June 30, 2025 Chapter 11 bankruptcy. *See In re Wolfspeed, Inc.*, Case No. 25-90163 (June 30, 2025, Bankr. S.D. Tex.). The post-separation restrictive covenants under the Dern Employee Agreement had a one-year term, which expired last month, on July 4, 2026. (*See* Doc. 48-12 ¶ 4(d).)

Wolfspeed alleges that after it terminated Dern, he subsequently accepted employment with Navitas as its Vice President of Sales for Europe, the Middle East, and Africa and India. (*Id*. ¶ 72.) Wolfspeed alleges "upon information and belief" that Dern works in a position that "is identical (or nearly identical) to the position that he held at Wolfspeed, and "upon information and belief" is "soliciting Wolfspeed's current customers and employees" in violation of the restrictive covenants in Dern Employee Areement with Wolfspeed. (*Id.* ¶¶ 72-75.)

As Wolfspeed has known at all relevant times to this action, Dern is a citizen of the Federal Republic of Germany who resides in Starnberg, Germany. (Doc. 20 ¶ 5; Doc. 48 ¶ 5.) Contrary to Wolfspeed's assertion in the Declaration of Allyson Van Gorder, Dern did not "relocate[e] to Germany." (Doc. 57 ¶ 10.) Dern resided and worked in Germany full time since July 2021 while employed by Wolfspeed. Dern's residential address in Germany—Jakl-Jordan-Weg 1, 82319 Starnberg, Germany—has remained unchanged since his employment with Wolfspeed. Wolfspeed is well-aware of Dern's residential address in Starnberg, Germany. For instance, attached as **Exhibit 1** is a July 17, 2025

- 4 -

return shipping label provided to Dern by Wolfspeed after Dern's termination for him to send his company laptop back to Wolfspeed, which reflects Wolfspeed's knowledge of Dern's residential address in Germany.

Dern was first named as a Defendant in this action in Wolfspeed's First Amended Complaint, filed January 6, 2026. (Doc. 20.) On January 8, 2026, Wolfspeed caused the Court to issue an original summons to Dern at an address in Cayucos, California where he does not reside (Doc. 21-1). That original summons was not served on Dern within 90 days, as required by Rule 4(m) of the Federal Rules of Civil Procedure, and Wolfspeed did not move to extend the time for service.

It is accurate that at the May 6, 2026 hearing on Wolfspeed's unsuccessful Emergency Motion for Temporary Restraining Order and Preliminary (*see* Notice of Hearing, Doc. 36), Wolfspeed's former counsel, Rebecca Lindahl, asked the undersigned counsel at Bell Davis Pitt about service of process on Dern, to which the undersigned responded that the matter could be addressed after the Court ruled on Wolfspeed's then-pending motion for leave to file a second amended complaint. (Lindahl Aff., Doc. 58 ¶ 7.) However, in a telephone call the next day on May 7, 2026, Ms. Lindahl stated that she believed that Sascha Dern had been served, but that she did not yet have proof of service. May 7, 2026 appears to have been the last time that the undersigned communicated with Ms. Lindahl. On May 13, 2026, Wolfspeed's current counsel, Edward Roche, notified the undersigned that his firm would be taking over the representation of Wolfspeed in this case.

Later in May in an introductory telephone call, the undersigned informed Mr. Roche that Bell Davis Pitt could not accept service of process on behalf of Dern.

On May 15, 2026, Wolfspeed caused the Court to issue a second summons to Dern at a business address in Germany. (Doc. 42.) It is unknown what efforts, if any, Wolfspeed undertook to serve this second summons on Dern in Germany. It is unclear why Wolfspeed subsequently tried to again serve Dern on July 1, 5, and 7 via a process server at the same residential address in Cayucos, California where it was previously unsuccessful with the original summons and where Dern does not reside. (*See* Roche Aff. Doc. 59 ¶ 4.) There is no indication in the record that Wolfspeed actually attempted to serve Dern in Germany.

It is not disputed that Bell Davis Pitt has an attorney-client relationship with Dern relating to this action. However, Dern's position is that, as a citizen and resident of Germany, service of process must be accomplished in accordance with the Hague Convention. Dern is entitled to the protections afforded him under the laws of Germany and does not concede that this Court has personal jurisdiction over him. In this regard, Dern has not authorized Bell Davis Pitt to accept service of process on his behalf. Bell Davis Pitt is ethically bound to abide by its client's instructions and may only act as authorized by its client. *See* N.C. R. Prof. Cond. Rule 1.2.

## ARGUMENT

### 1.  Legal Standard.

Federal Rule of Civil Procedure 4(f)(3) authorizes service on an individual in a foreign country "at a place not within any judicial district of the United States . . . by other

- 6 -

means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f) (2026). By its plain language, this rule imposes two requirements: the method of service must be court-directed, and it must not be prohibited by international agreement. "A court is afforded wide discretion in ordering service of process under Rule 4(f)(3), which provides the Court with . . . flexibility and discretion . . . empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015) (quotation omitted).

The textual limitation of Rule 4(f)(3) is that service "by other means" must not be "prohibited by international agreement," which means the Hague Convention. The Hague Convention is a 1964 multilateral treaty that prescribes the manner in which a plaintiff can serve a summons and complaint on a defendant in a foreign nation. The Hague Convention is "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). The United States and Germany are both parties to the Hague Convention. *Id.* Under the Hague Convention, signatory countries "establish a central authority to receive requests for service of documents from other countries," and then "must serve the documents by a method prescribed by the internal law of the receiving state" and "provide a certificate of service that conforms to a specified model." *Id.* at 698-99.

In the present case, Wolfspeed extensively relies on *Schlunk* in support of its argument that service of process on Dern via email to Bell Davis Pitt "does not require

'transmittal of documents abroad' and thus falls outside the scope of the Hague Convention." (Pl. Br., Doc. 56, p. 12.) However, the key distinction between *Schlunk* and the present case is that *Schlunk* involved substituted service of a foreign parent corporation via its domestic subsidiary, "which, under state law [of Illinois], is the foreign corporation's involuntary agent for service of process." *Schlunk* at 696. As such, the Supreme Court's ruling in *Schlunk* is inapposite. Here, Bell Davis Pitt has not been authorized by Dern to accept service of process, cannot accept service of process under the Rules of Professional Conduct and applicable laws of agency, as discussed below, and therefore, unlike *Schlunk*, is not Dern's domestic agent for service of process.

2. **Counsel Has No Authority to Accept Service on its Client's Behalf and Cannot Do So Without Violating the Rules of Professional Conduct.**

The North Carolina Rules of Professional Conduct impose upon counsel a mandatory duty to abide by a client's decisions concerning the objectives of representation. N.C. R. Prof. Cond. Rule 1.2(a) ("a lawyer shall abide by a client's decisions concerning the objectives of representation"). A lawyer may take action on behalf of the client only as is expressly or impliedly authorized to carry out the representation. *Id*. An attorney is bound to comply with a client's lawful instructions and the attorney's actions are restricted to the scope of the authority conferred. *State v. Williams*, 191 N.C. App. 96, 98–99, 662 S.E.2d 397, 399 (2008); *State v. Ali*, 329 N.C. 394, 403, 407 S.E.2d 183, 189 (1991).

Buttressing this Rule of Profession Conduct, the attorney-client relationship is governed by fundamental principles of agency law, consistent with which an "[attorney] agent must be authorized to act for the [client] principal." *Johnson v. Amethyst Corp.*, 120

- 8 -

N.C. App. 529, 532-33, 463 S.E.2d 397, 400 (1995) ("North Carolina law has long recognized that an attorney-client relationship is based upon principles of agency."). As such, "in the absence of express authority, an attorney generally has no power, by stipulation, agreement, or otherwise, to waive or surrender the substantial legal rights of his client." *Bailey v. McGill*, 247 N.C. 286, 298, 100 S.E.2d 860, 870 (1957) (quotation omitted).

In regard to service of process, the decision whether to accept service—and thereby voluntarily submit to legal process and the jurisdiction of the court—is a fundamental right that belongs exclusively to the client. It is not within counsel's authority to disregard a client's instructions and waive this right. *Id.*; N.C. R. Prof. Cond. Rule 1.2. Accepting service without client authorization would breach both the Rules of Professional Conduct and the foundational law of agency.

Here, it is not disputed that Bell Davis Pitt has an attorney-client relationship with Dern relating to this action. However, the critical limitation is that Dern has not authorized Bell Davis Pitt to accept service of process on his behalf. Rather, Dern, a citizen and resident of Germany, justifiably asserts his right to service of process in accordance with international law under the Hague Convention and does not concede that this Court has personal jurisdiction over him. Bell Davis Pitt has no express or implied authority to disregard or override its client's instruction.

### 3. Dern Has Not Been Evasive or Engaged in Gamesmanship.

Wolfspeed's attempt to malign Dern (and Bell Davis Pitt) as being evasive and engaging in gamesmanship regarding service of process (Pl. Br., Doc. 56, p. 1) is unfounded.

- 9 -

Having employed Dern to work in Germany, knowing from the outset that Dern "is a citizen and resident of Starnberg, Bayern, Germany" (Doc. 20 ¶ 5; Doc. 48 ¶ 5), and with knowledge of his actual residential address in Germany—Jakl-Jordan-Weg 1, 82319 Starnberg, Germany—Wolfspeed nevertheless caused the original summons to be issued to Dern on January 8, 2026 at an address in Cayucos, California (Doc. 21-1) where Dern does not reside. Wolfspeed appears to have given little consideration to serving Dern in Starnberg, Germany, which it knew and specifically alleged in both the First and Second Amended Complaints.

Months later, on May 15, 2026, after this original summons expired, Wolfspeed caused the Court to issue a second summons to Dern at a business address in Germany. (Doc. 42.) However, Wolfspeed's affidavits in support of its Motion are noticeably silent regarding any actual efforts by Wolfspeed to attempt service of process on Dern at this business address or at his known residential address in Starnberg, Germany. Instead, Wolfspeed tried to again serve Dern on July 1, 5, and 7 at the same residential address in Cayucos, California where it was previously unsuccessful with the original summons and where Dern does not reside. (*See* Roche Aff. Doc. 59 ¶ 4.)

Regarding service of process on Dern in Germany, all that Wolfspeed says is that it "investigated the international process through the Hague Convention" in March 2026 and that it "contacted a third-party vendor" before it apparently gave up and decided that "service through the Hague Convention would be a lengthy and expensive process." (Lindahl Aff., Doc. 58 ¶ 6.) While it is true that counsel for Wolfspeed asked Bell Davis Pitt to accept service of process on behalf of Dern, Bell Davis Pitt was not authorized to do so, and such

requests did not relieve Wolfspeed of its independent obligation to make reasonable effort to serve Dern at his established and known residential address in Germany.

The reality of this situation is that Wolfspeed did not diligently pursue service of process on Dern in Germany, despite knowing his residential address there. Now, after substituting its counsel and with case management deadlines approaching, Wolfspeed is trying to point the blame at Dern (and Bell Davis Pitt) for service of process matters that were entirely within the control and responsibility of Wolfspeed as the Plaintiff in this action. Had Wolfspeed diligently commenced service of process efforts on Dern in Germany from the outset, the purportedly "lengthy, time-consuming service process through the Hague Convention" of which it now complains could have completed without seeking the drastic remedy of forcing substituted service of process on Bell Davis Pitt in contravention of its authority, the Rules of Professional Conduct, and international law.

### 4. Less Drastic Remedies are Available.

Wolfspeed has not demonstrated substantive prejudice that would warrant bypassing the international service of process requirements of the Hague Convention or compelling substituted service on Bell Davis Pitt in violation of its obligations under the Rules of Professional Conduct. Wolfspeed claims that it "urgently needs to serve Dern" because (without any supporting factual basis) he is actively soliciting its customers (Pl. Br., Doc. 56, p. 15). However, assuming for argument's sake that the restrictive covenants contained in the Dern Employee Agreement are enforceable, which is not conceded, the one-year term of such restrictive covenants has now expired—Dern was terminated by

- 11 -

Wolfspeed on July 4, 2025 and the restrictive covenants therefore expired last month, on July 4, 2026.  (*See* Doc. 48-12 ¶ 4(d).)  Thus, there is no "urgent need" on this alleged basis.

It is, however, acknowledged that case management deadlines are approaching.  In this regard, Wolfspeed asks the Court to grant its Motion "on an expedited basis in advance of the parties' impending discovery and mediation deadlines" (*See* Docs. 46, 60), both of which are currently set to expire later this month.  To the extent the Court is inclined to allow Wolfspeed relief in regard to service of process on Dern, the undersigned respectfully submits that a less drastic alternative to overriding international law and Bell Davis Pitt's obligations under the Rules of Professional Conduct would simply be to extend the case management deadlines to allow Wolfspeed reasonable time to lawfully serve Dern at his established residential address in Starnberg Germany in compliance with the Hague Convention.  Wolfspeed has known this residential address all along and it has been unambiguously confirmed in this brief to eliminate any uncertainty.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Substituted Service.  However, should the Court order that substituted service of process on Dern be made via email to Bell Davis Pitt, any such service is by compulsion of court order, is not consensual, and does not arise from express or implied authority conferred upon Bell Davis Pitt by Dern.  Dern expressly reserves the right to assert, and does not waive, his right to challenge personal jurisdiction and any other defenses that may be available to him under Federal Rule of Civil Procedure Rule 12(b)(2)-(5).

- 12 -

Respectfully submitted this 6th day of August, 2026.

/s/ Michael D. Phillips

Michael D. Phillips
N.C. State Bar No. 31730
mphillips@belldavispitt.com
BELL, DAVIS & PITT, P.A.
P.O. Box 21029
Winston-Salem, NC 27120-1029
Telephone:    (336) 722-3700
Facsimile:    (336) 714-4101
*Attorney for Defendant Sascha Dern*
*by Limited Appearance*

- 13 -

## RULE 7.3(d) CERTIFICATE OF WORD COUNT

I certify that the foregoing OPPOSITION TO PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE does not exceed 6,250 words (as reported by the word-count feature of Microsoft Word), and is therefore in compliance with the length requirement set forth in Local Civil Rule 7.3(d).

This the 6th day of August, 2026.

/s/ Michael D. Phillips

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this OPPOSITION TO PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE was filed through the CM/ECF system and that such filing was sent electronically to those parties registered with the CM/ECF system.

This the 6th day of August, 2026.

/s/ Michael D. Phillips

- 15 -