IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 1:24-cv-01038

| | |
|---|---|
| WOLFSPEED, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>NAVITAS SEMICONDUCTOR CORPORATION, GENESIC SEMICONDUCTOR LLC, PAUL WHEELER, and SASCHA DERN,<br><br>Defendants. | |

**PLAINTIFF WOLFSPEED, INC.'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION FOR SUBSTITUTED SERVICE**

## Table of Contents

**TABLE OF AUTHORITIES** .......... **II**

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

I. Service via Bell Davis indisputably satisfies Due Process. .......... 2

II. Service via Bell Davis does not implicate the Hague Convention. .......... 3

III. Rule 4(f)(3) imposes no exhaustion or diligence prerequisite. .......... 4

IV. Dern's objections based on lacking authority and legal ethical issues are inapposite. .......... 7

V. Dern's proposed "less drastic" alternative is untethered to the law and only rewards delay. .......... 8

VI. In the alternative, Wolfspeed requests an extension of the Dern summons. .......... 9

**CONCLUSION** .......... **9**

**CERTIFICATE OF COMPLIANCE** .......... **11**

**CERTIFICATE OF SERVICE** .......... **12**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) ........ 3

*Affinity Tool Works, LLC v. Hangzhou Great Star Indus. Co.*, 603 F. Supp. 3d 274 ........ 2, 3, 6, 8

*Celgard, LLC. v. Shenzen Senior Tech. Material Co.*, 2020 WL 2575561 (W.D.N.C. May 21, 2020) ........ 5

*Enovative Techs., LLC v. Leor*, 622 F. App'x 212 (4th Cir. 2015) ........ 2, 5, 7, 8

*FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531 (E.D. Va. 2005) ........ 4

*Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175 (S.D. Fla.2012) ........ 3

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ........ 2

*Prediction Co. LLC v. Rajgarhia*, No. 09 Civ. 7459(SAS), 2010 WL 1050307 (S.D.N.Y. Mar 22, 2010) ........ 4

Rules

Federal Rule of Civil Procedure 4(f)(3) ........ 9

## INTRODUCTION

Wolfspeed's Motion presents a straightforward request: a request to authorize service on an overseas defendant through his U.S. counsel ("Bell Davis") where that defendant indisputably has actual notice of the action, service would not violate the Hague Convention, and the alternative has potential for a years-long delay. Alternative service is appropriate here under Rule 4(f)(3) because, as Wolfspeed's opening brief explained, service on U.S. counsel: (1) satisfies due process, and (2) is not prohibited by international agreement.

Dern's Opposition does not meaningfully challenge either element. It does not dispute the due process prong, acknowledging that he has actual notice of this action and maintains an attorney-client with Bell Davis. On the second prong, Dern offers only the conclusory assertion that alternative service would offend the Hague Convention. That argument runs contrary to the Supreme Court's holding in *Schlunk* that the Hague Convention is not implicated where, as here, service does not require transmission of documents abroad.

Lacking authority on the applicable standards, Dern attempts to graft onto Rule 4(f)(3) an exhaustion requirement that appears nowhere in the Rule or the Hague Convention and is expressly rejected by the case law. He detours into discussions of agency principles and the Rules of Professional Conduct that are incorrect and irrelevant. And his

criticisms of Wolfspeed's prior service efforts misstate both the governing law and the factual record.

## ARGUMENT

A court has broad discretion in ordering alternative service under Rule 4(f)(3). In its discretion, a court may order that service be accomplished via any alternative method that would (1) satisfy due process—*i.e.*, be reasonably calculated to provide notice, and (2) not be prohibited by international agreement. *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015).

### I. Service via Bell Davis indisputably satisfies Due Process.

Due process requires only that the method of service under Rule 4(f)(3) be "reasonably calculated under all the circumstances to give notice to [the] defendant." *Enovative Techs.*, 622 F. App'x at 214 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks omitted).

Dern does not argue that due process is lacking. He admits in his Opposition that Bell Davis maintains an attorney-client relationship with him in connection with this action. (Opp., ECF No. 62, at 2.) There is therefore no question that service through Bell Davis is reasonably calculated to provide notice to Dern.

The due process inquiry is routinely satisfied where, as here, the foreign defendant acknowledges an attorney-client relationship with U.S. counsel and remains in communication with that counsel regarding the dispute. *Affinity Tool Works, LLC v.*

*Hangzhou Great Star Indus. Co.*, 603 F. Supp. 3d 274, 276−77 (W.D.N.C. 2022) (holding that service through domestic counsel satisfied due process because counsel had an ongoing attorney-client relationship with the foreign defendant); *see also Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012) (compiling cases where service under Rule 4(f)(3) through domestic counsel satisfied due process where foreign defendant was in communication with domestic counsel).

**II. Service via Bell Davis does not implicate the Hague Convention.**

On the second prong, Dern mistakenly argues (without any legal support) that the Hague Convention prohibits Wolfspeed's proposed method of service. But the Supreme Court held in *Volkswagenwerk Aktiengesellschaft v. Schlunk* that the Hague Convention applies only where service requires the transmittal of judicial documents abroad. 486 U.S. 694, 701 (1988). Where service is accomplished domestically, as here, the Hague Convention is not implicated. *Id.* at 707; *Affinity Tool Works, LLC v. Hangzhou Great Star Indus. Co.*, 603 F. Supp. 3d 274, 276 (W.D.N.C. 2022).

Dern merely attempts to distinguish *Schlunk* on the grounds that the domestic recipient there was an involuntary agent for service under Illinois law. (Opp. at 8.) That argument misses the point entirely. Wolfspeed is not relying on *Schlunk* for any proposition related to agency. *Schlunk* conclusively resolves the key point that the Hague Convention is not an issue where service occurs domestically. 486 U.S. at 707. This defeats Dern's argument that the Hague Convention prohibits service domestically.

Dern's argument is impossible to harmonize with other federal courts' decisions allowing service on overseas defendants' U.S. counsel under Rule 4(f)(3). By authorizing alternative service in those cases, those courts have determined that such service is not prohibited by any international agreement. This includes cases in which the defendants were in countries that are signatories to the Hague Convention. *See, e.g.*, *Prediction Co. LLC v. Rajgarhia*, No. 09 Civ. 7459(SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar 22, 2010) ("The Court is not aware of any international agreement that prohibits" serving an Indian resident via U.S. counsel); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (citing *Schlunk* in a case involving a defendant in Pakistan and concluding that "[s]ince service is being requested on defense counsel, whose office is located in Richmond, Virginia, the Hague Convention does not apply").

Dern does not grapple with any of these contrary authorities. His argument flies in the face of *Schlunk* and cannot prevent Wolfspeed from satisfying this second prong.

## III. Rule 4(f)(3) imposes no exhaustion or diligence prerequisite.

Dern's criticisms of Wolfspeed's service efforts are unavailing. To the extent Dern is attempting to manufacture an exhaustion requirement under Rule 4(f)(3), that effort fails for two independent reasons. First, a plaintiff is not required to first attempt service under the Hague Convention or other methods, let alone exhaust it, before seeking court-authorized alternative service under Rule 4(f)(3). Second, even if such a requirement existed, Wolfspeed satisfied it.

**a. Dern's assertion that Wolfspeed is first required to attempt service in Germany has no legal support.**

Dern cites no authority for his repeated suggestion that Wolfspeed is required to first attempt service through the Hague Convention pursuant to Rule 4(f)(1) before seeking alternative service from this Court. (*See* Opp. at 2, 11.) Controlling case law holds the opposite: court-ordered alternative service under Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief.'" *Enovative Techs.*, 622 Fed. Appx. at 214 (internal quotation marks omitted). Rather, "[i]t is merely one means among several which enables service of process on an international defendant." *Id.* (internal quotation marks omitted). There is no hierarchy between different methods of service. *Id.* Thus, a plaintiff "is not required to attempt service under Rule 4(f)(1) before it may request the Court to provide an alternate method of service under Rule 4(f)(3)." *Celgard, LLC. v. Shenzen Senior Tech. Material Co.*, 2020 WL 2575561, at *2 (W.D.N.C. May 21, 2020).

**b. Dern's mischaracterization of the factual record does not cure the absence of any exhaustion requirement.**

Even if Wolfspeed's prior service efforts were relevant, the record shows that Wolfspeed made multiple reasonable, good faith attempts to locate and serve Dern before seeking alternative service. The arguments in Dern's Opposition are factually incorrect and immaterial.

Wolfspeed has attempted to serve Dern at his California address *seven* times, asked Bell Davis on numerous occasions whether it would accept service on Dern's behalf,

attempted service on Dern though his U.S.-based employer, and engaged with a service vendor about initiating the process under the Hague Convention. *See* ECF No. 56 at 7–9. Neither Navitas nor Bell Davis has accepted service. *See* Roche Decl. ¶ 8. The process under the Hague Convention will cost over $8,000 and will likely result in a years-long delay. Roche Decl. ¶ 9. And the seven attempts to serve Dern in California have been unsuccessful. *See* ECF No. 56 at 7–9.

Dern seeks to portray the California service attempts as irrational by claiming that he has resided exclusively in Germany since 2021.[1] (Opp. at 4.) That is inconsistent with the factual record. Wolfspeed's personnel records, together with publicly available database searches, indicate that Dern currently maintains a California address despite apparent part-time residence in Germany. *See* ECF No. 56 at 7; Van Gorder Decl. ¶ 4; Roche Decl. ¶ 4. Further, as of 2022, Dern was a U.S. resident who entered into an arrangement with Wolfspeed (which was a North Carolina entity) permitting him to work *part of the year* from Germany while maintaining U.S. ties. Van Gorder Decl. ¶ 4. Wolfspeed based its efforts to serve him in California on the reasonable possibility that Dern may have maintained the same arrangement.

[1] Wolfspeed has a German address for Dern. However, this has no bearing on alternate service. Rule 4(f)(3) does not require a plaintiff to serve a defendant at every known foreign address, nor does it mandate service through the Hague Convention whenever a foreign address is available. Dern's argument was expressly rejected in *Affinity Tools*. There, the defendant argued that because the plaintiff knew its address in China, the plaintiff was required to serve it there. The Court disagreed, explaining that the existence of a foreign address "offers little, if any, reasoning why service cannot be effected on him . . . without needing to transmit documents to China." *Affinity Tool Works, LLC v. Hangzhou Great Star Indus. Co.*, 603 F. Supp. 3d 274 at 279.

Absent court approval under Rule 4(f)(3), there is nothing else Wolfspeed could do to serve Dern besides incurring significant expense and waiting years for service under the Hague Convention—an unduly burdensome option that would unnecessarily delay this litigation. Dern's argument seeks to force Wolfspeed to wait. But imposing that requirement is inconsistent with the law.

## IV. Dern's objections based on lacking authority and legal ethical issues are inapposite.

Dern then oddly pivots to an argument that Bell Davis lacks authority to "accept" service on his behalf and that doing so would somehow violate the North Carolina Rules of Professional Conduct. ECF No. 62 at 8−9. The argument has no bearing on the outcome of this Motion and misunderstands the relief Wolfspeed seeks.

Nothing in Rule 4(f)(3) requires counsel to "accept" service on behalf of its client. Service is not a consensual act. A defendant cannot defeat personal service by refusing to take the papers, and a foreign defendant cannot defeat Rule 4(f)(3) service by directing counsel not to "accept" service. Rule 4(f)(3) merely creates a new method in which service may be effectuated, regardless of whether the defendant consents to that method. *Enovative Techs.*, 622 Fed. Appx. at 214 (permitting service on foreign defendant via email despite foreign defendant's objections). There is no waiver, no consent, and no exercise of agency involved.

The cases Dern cites address whether an attorney may voluntarily waive a client's rights without authorization. They have no application where the Court itself orders the

method of service. Neither the North Carolina Rules of Professional Conduct nor any principle of agency law prohibits an attorney from receiving documents that a federal court has ordered to be delivered to that attorney's email address pursuant to Rule 4(f)(3).

## V. Dern's proposed "less drastic" alternative is untethered to the law and only rewards delay.

As a final attempt to avoid service, Dern argues that the Motion should be denied because allegedly "less drastic" alternatives remain available—which apparently means service through the Hague Convention. (Opp. at 11−12.) The argument is entirely untethered from Rule 4(f)(3). Dern cites no authority suggesting that a court must consider "less drastic" alternatives before authorizing alternative service, and no authority imposing a least-restrictive-means test under Rule 4(f)(3). Nor does he cite any authority for the premise underlying his argument: that court-authorized service under Rule 4(f)(3) is somehow a "drastic" remedy in the first place. It is not. The Fourth Circuit has expressly held that Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but rather "one means among several" available for serving a foreign defendant. *Enovative Techs.*, 622 F. App'x at 214. Dern's invitation to graft extra requirements onto Rule 4(f)(3) therefore finds support in neither the text of the Rule nor the governing case law.

Further, denying this Motion only rewards Dern's delay. By proposing this alternative, Dern concedes that Hague service is slow. His proposal would reintroduce the very delay that Rule 4(f)(3) exists to avoid. *Affinity Tool Works*, 603 F. Supp. 3d at 279.

Delay would simultaneously disrupt the Court's scheduling order and prejudicing Wolfspeed and the other parties who have been litigating this case for over a year.[2]

## VI. In the alternative, Wolfspeed requests an extension of the Dern summons.

To the extent the Court denies Wolfspeed's Motion, Wolfspeed respectfully requests that the Court extend the validity of the current summons issued for Dern on May 15, 2026. ECF No. 42. Such an extension would allow Wolfspeed to continue pursuing service through either (a) personal service in the U.S. during one of Dern's visits, or (b) service through the Hague Convention process. Although Rule 4(m)'s 90-day deadline "does not apply to service in a foreign country", Wolfspeed requests, for the avoidance of doubt, that the Court expressly provide that the summons shall remain valid until Dern is either served in the U.S. or through the Hague Convention, whichever occurs first.

## CONCLUSION

For the foregoing reasons, Wolfspeed respectfully requests that the Court grant its Motion and enter an order authorizing service on Defendant Sascha Dern by email on Bell Davis pursuant to Federal Rule of Civil Procedure 4(f)(3).

---

[2] Dern's suggestion that the expiration of his restrictive covenants moots the need for expedited service, (Opp. at 11-12), is both legally and factually wrong. Wolfspeed does not seek prospective enforcement of an expired covenant, it seeks redress for Dern's breaches of those covenants while they were in force. If anything, the expiration underscores why expedited service is warranted. Dern's evasion has allowed his breaching conduct to go unaddressed for over a year, and the resulting harm to Wolfspeed continues to compound.

Respectfully submitted, this 19th day of August, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

/s/ Edward F. Roche

Edward F. Roche (N.C. Bar No. 55434)
eroche@smithlaw.com
Hope C. Garber (N.C. Bar No. 59501)
hgarber@smithlaw.com
Post Office Box 2611
Raleigh, NC 27602-2611
Tel.: (919) 821-1220
Fax: (919) 821-6800

*Attorneys for Plaintiff Wolfspeed, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.3(d)(1), the undersigned certifies that this reply brief contains no more than 3,125 words (exclusive of the case caption, any index, table of contents, table of authorities, signature block, and any required certificates), as reported by the word-processing software used to prepare this brief, and is therefore within the length limitation for reply briefs.

August 19, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

/s/ Edward F. Roche
Edward F. Roche

**CERTIFICATE OF SERVICE**

I certify that I electronically filed this document with the Clerk of Court using the CM/ECF System, which will send notification of the filing to all counsel of record.

August 19, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

/s/ Edward F. Roche
Edward F. Roche